**STATE of Missouri, Plaintiff–Respondent,**

v.

**Edwin JONES, Defendant–Appellant.**

**No. 52046.**

Missouri Court of Appeals, Eastern District, Division Four.

March 29, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 1988.

Application to Transfer Denied June 14, 1988.

State had used its peremptory challenges to exclude black veniremen from the jury solely because of their race. The State opposed the motion, articulating what it now characterizes as "racially neutral and not facially frivolous" reasons for having challenged the veniremen in question. The circuit court refused to quash the jury, which eventually found defendant guilty on all counts. Defendant was sentenced by the court as a prior and persistent offender to twenty years imprisonment on the burglary count and to three years on each of the other counts, the sentences to be served concurrently. Defendant appeals, asserting, inter alia, that his motion to quash should have been granted.

## I

The State denies a black defendant his right to equal protection of the laws if, on the assumption that no black juror can fairly judge a black defendant, it uses its peremptory challenges to exclude black veniremen from the petit jury. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The defendant, of course, is required to make a prima facie showing that the State's use of its peremptory challenges amounted to purposeful discrimination; but once he has, the State must rebut the inference of discrimination with "a neutral explanation related to the case to be tried" that persuades the trial court the veniremen were not challenged because of their race. *Id.* at 1723–1724.

The ultimate burden of persuasion, however, lies with, and never shifts from, the defendant. *State v. Antwine*, 743 S.W.2d 51, 63 (Mo. banc 1987). Thus, if the State rebuts the inference of discrimination with neutral explanations for having exercised its peremptory challenges, the defendant's motion to quash the jury can succeed only if the defendant persuades the trial court that the State's explanations are a pretext for discrimination. *Id.* at 64.

The State in this case apparently concedes defendant raised an inference of purposeful discrimination. It claims it rebut-

Henry B. Robertson, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Kurt A. Hentz, Asst. Atty. Gen., Jefferson City, for plaintiff-defendant.

STEPHAN, Judge.

Facing trial on charges of burglary in the first degree, stealing property of a value of at least $150, and resisting arrest, defendant, a black man, moved to quash the jury before it was sworn, alleging the

ted this inference, however, with "racially neutral and not facially frivolous" explanations for having exercised the challenges in question. The trial court implicitly found there had been no purposeful discrimination when, without comment, it denied defendant's motion to quash.

In his first point, defendant urges this court to find that the explanations the State advanced for having struck members of defendant's race from the venire were pretextual. Whether the State's explanations were disingenuous, however, is a question of fact which the trial court has already resolved adversely to defendant. A finding of fact will not be set aside on appeal unless the record demonstrates the finding is clearly erroneous. *State v. Antwine*, supra, 66.

When asked to explain why he used his six peremptory challenges to remove black members from the venire, the prosecutor responded that he struck venireman Ferguson because he questioned her ability to be impartial, that he struck venirewoman Dean because Dean had shot and killed her son and had been investigated by the police in connection with the homicide, that he struck venirewomen Dunn and Parker because they were unresponsive during voir dire, that he struck venireman Barber because of the views Barber expressed on the credibility of police testimony, and that he struck venirewoman Reese because Reese was a schoolteacher and seemed overly assertive on the issue of defendant's rights.

Though he was obliged to do so, defendant in this case made no attempt to persuade the trial court that the prosecutor's explanations were a pretext for discrimination. *State v. Antwine*, supra, 64. He asserted merely that the "... State's use of its peremptory strikes [denied his] client a jury of his peers." Defendant, however, has no right to a petit jury composed in whole or in part of persons of his own race. *Batson*, 106 S.Ct. at 1716. Equal Protection guarantees only that the State will not exclude members of the defendant's race from the jury venire on account of race. *Id.* at 1717–1718.

The trial court concluded that the prosecutor did not use his peremptories to discriminate against members of defendant's race. The conclusion is finding of fact to which we must defer unless our review of the record leaves us with the definite and firm conviction that the trial court was mistaken. *State v. Payton*, 747 S.W.2d 290, 292 (Mo.App.1988). We therefore turn to the record of voir dire.

■ During voir dire, venirewoman Ferguson, whose home had been twice burglarized, stated, "I couldn't be impartial to Mr. Jones [defendant]. I'm sure he didn't do it [burglarize my home], but it still doesn't bring back the things that I lost that were important." A venireman's admitted inability to hear the evidence impartially will justify a peremptory challenge, and can often justify a challenge for cause. Ms. Ferguson's frank statement of prejudice against defendant supports the trial court's conclusion that the prosecutor genuinely questioned Ms. Ferguson's ability to hear the evidence impartially. The conclusion is not clearly erroneous.

Defendant does not challenge the strike exercised against venirewoman Dean, the woman who stated she had shot and killed her son. We therefore assume he concedes Ms. Dean was not stricken on account of race, and turn to his claim that race was the basis for the strikes exercised against venirewomen Dunn and Parker.

■ The prosecutor challenged venirewoman Parker ostensibly because she was unresponsive during voir dire. Her answers to questions the prosecutor posed were indeed monosyllabic, and in any case, a venireman's responsiveness or unresponsiveness is a matter of demeanor which we cannot, and will not, judge on the cold record. The trial court, which witnessed Ms. Parker's demeanor found the prosecutor's explanation credible. We defer to that finding.

■ The prosecutor stated he struck venirewoman Dunn because she failed to re-

spond to his voir dire questions and gave unreasonable responses to questions posed by defense counsel. Ms. Dunn did say very little during the prosecutor's voir dire, but even more troubling was her statement to defense counsel that she would automatically believe a witness who took the stand and identified defendant as the perpetrator of the burglary. As we have already stated, a venireman's apparent inability to hear the evidence impartially justifies a peremptory strike. The trial court found that Ms. Dunn's demeanor and her apparent bias in favor of an identifying witness were the true reasons for the strike. We find no error.

Venirewoman Reese was another who was stricken ostensibly on grounds of demeanor. The prosecutor stated Reese impressed him as overly assertive on the issue of defendant's rights. We do not find an indication of this assertiveness in the record of voir dire, but we deal with mere words on a page. The trial court observed Ms. Reese first hand and was persuaded that the prosecutor genuinely found her overly assertive. We defer to this finding.

The prosecutor also based his strike against Ms. Reese on the fact that she was a school teacher. Though he did not raise the matter in the trial court, defendant now argues that a white schoolteacher remained on the jury panel. The record does indicate that a professor from St. Louis University remained on the panel. Neither the professor's race nor sex, however, is a matter of record and, in any event, the prosecutor articulated a legitimate ground for striking Ms. Reese that was unrelated to her profession.

■ The prosecutor challenged venireman Barber ostensibly because of Barber's views on the credibility of police testimony.

On voir dire, venireman Barber made a statement to the effect that though he did not consider police officers more honest than other witnesses, he might find them more credible because they "... would be more adapted (sic) to details than your average citizen." When responding to an allegation of *Batson* error, the prosecutor need not support his peremptory strikes with explanations that would justify challenge for cause. *Batson*, 106 S.Ct. at 1723. The prosecutor's "hunches" will suffice, so long as they are legitimate, and not a pretext for discrimination. *State v. Antwine*, supra, 67. The trial court determined Barber was stricken for preceived bias and not on account of race. The finding is not clearly erroneous.[1]

The record before us supports the State's assertion that the reasons it gave for having exercised the challenges in question were, on their face at least, neutral and not frivolous. The record also establishes that defendant made no attempt to persuade the trial court that the reasons were merely a pretext for discrimination. Whether the reasons were in fact pretextual was thus solely a question of credibility. The trial court found the State credible, and nothing in the record persuades us that the finding was clearly erroneous. Point denied.

## II

■ In his second point, defendant asserts the trial court should have sustained the objection he raised when the prosecutor called him a "professional" burglar during closing argument. He also asserts that though the trial court properly sustained the objection he raised to another of the prosecutor's closing remarks, it erred when it failed to instruct the jury to disregard the remark. The point is meritless.

At trial, the State adduced evidence that defendant drove his own car to the burgla-

1. In his argument on this point, defendant suggests that the state would not deliberately "hurt its own cause" by striking veniremen who expressed prejudice against defendant or bias in favor of the state's witnesses, and that the prosecutor's articulated reasons for striking veniremen Ferguson, Dunn, and Barber were therefore transparently pretextual. A prosecutor, however, will often strike such veniremen peremptorily if defense counsel makes no attempt, or fails in his attempt, to strike them for cause, simply to preclude a claim of ineffective assistance of counsel or trial court error on appeal.

ry he allegedly committed. During closing argument, defense counsel challenged this evidence with these rhetorical questions:

> Who would drive their own car somewhere when it could be seen if they are going to do something like that? If they do drive their own car, if their [sic] dumb enough, and the're [sic] using it to go to and from the car with the loot, where's the radio and the television?

When the prosecutor began his response to these questions with "he says ... how could anyone be so dumb as to ... drive to work in their car," defense counsel objected to the characterization "to work" and moved for a mistrial. The trial court sustained the objection but denied the motion. Defendant does not challenge either of these rulings. He argues, however, that the trial court, upon sustaining the objection, should have admonished the jury to disregard the prosecutor's remark.

We note that after the trial court sustained defense counsel's objection, defense counsel said, "I'll ask that the jury be instructed to disregard—". He never finished his sentence and, though he had ample opportunity, he never renewed what we assume was an attempt to request that the trial court instruct the jury to disregard the characterization "to work". In view of defense counsel's failure to articulate a request that the jury be admonished to disregard the characterization, the only duty of the trial court to act *sua sponte* would be to avoid manifest injustice. See *State v. Tygart,* 673 S.W.2d 83, 91–92 (Mo.App. 1984). We find no manifest injustice.

■ We now consider whether the trial court erred in overruling the objection defendant raised when the prosecutor made these closing remarks to the jury:

> Now, in that respect about being too dumb to drive his car there or too smart to either have removed the property he already got and come back because there was more valuable property or too smart to stash it somewhere else. Consider the burglar who committed the crime. The burglar is a good burglar in that; he's a professional—

Defendant asserts these remarks improperly suggested he had committed burglaries other than the one for which he was being tried. We disagree.

If the jury was able to glean anything from the challenged remarks, we doubt it was anything more pernicious than that the person who committed the burglary in question had to get to the scene some way, that driving his own car was a reasonable choice, and that a good burglar, an intelligent burglar, might be "too smart" to "stash" the fruits of the burglary in that car. We believe these remarks constitute a permissible response to questions defendant himself raised during closing argument. A defendant may not provoke a response to his argument and then assert error. *State v. Morris,* 662 S.W.2d 884, 890 (Mo.App.1983). Defendant's second point is denied.

### III

■ In his final point, defendant asserts the trial court erred in entering a judgment of conviction for burglary in the first degree because the record does not clearly establish that "guilty of burglary in the first degree" was the jury's true verdict. We disagree.

The record on appeal includes a verdict form signed by the jury foreman that recites, "As to Count I, we, the jury, find the defendant, Edwin Jones, guilty of burglary in the first degree as submitted in Instruction No. *5.*" It also includes a second verdict form, signed by the jury foreman, that reads, "As to Count I, we, the jury, find the defendant, Edwin Jones, guilty of burglary in the second degree as submitted in Instruction ____." As defendant points out, these verdicts conflict. Nevertheless, we find the conflict is resolved by other matters in the record.

After the jury retired to deliberate, it sent this written question to the trial court: "We vote guilty on Count I guilty of bur-

glary in the 1st Degree. Due (sic) we have to vote on the rest of counts." The trial court responded that the jury was to refer "to the instructions and evidence previously submitted". The verdict was subsequently announced, and each juror, upon being asked "Is the verdict I have just read your verdict?", responded that it was. The verdict, as announced, does not appear verbatim in the transcript. At sentencing however, defendant responded, "Yes, sir" when the trial court asked:

> [Do] you recall this case was tried to a verdict on June 12, 1986, at which time you were wound (sic) guilty of the charge of burglary in the first degree, stealing over One Hundred Fifty, and resisting arrest?

Thus, there can be no doubt that guilty of burglary in the first degree was the verdict that was announced and affirmed by the jury as its true verdict. Point denied.

The judgment is affirmed.

GARY M. GAERTNER, P.J., and SIMON, J., concur.