**Edwin JONES, Appellant,**

v.

**Jimmy JONES, Appellee.**

**No. 90–1696.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1991.

Decided July 9, 1991.

Rehearing Denied Aug. 21, 1991.

Michael J. Marshall, St. Louis, Mo., for appellant.

William J. Bryan, argued, for appellee; William L. Webster and William J. Bryan, Jefferson City, Mo., on the brief.

Before McMILLIAN, JOHN R. GIBSON and BOWMAN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Edwin Jones appeals from the district court's [1] denial of his petition for writ of habeas corpus, raising claims of racial discrimination in the selection of the petit jury, prosecutorial misconduct, inconsistent jury verdicts, and ineffective assistance of counsel. We affirm the judgment of the district court.

On June 12, 1986, a jury found Jones guilty of first degree burglary, stealing without consent over $150.00, and resisting arrest. The Circuit Court of the City of St. Louis, Missouri, sentenced Jones to concurrent prison terms of twenty years on the burglary count and three years each on the other two counts. The Missouri Court of Appeals affirmed the conviction and sentence. *State v. Jones*, 748 S.W.2d 898 (Mo. Ct.App.1988).

On February 16, 1989, the trial court denied Jones's motion for post-conviction relief as out of time, *Jones v. State*, No. 2216 (Cir.Ct.Mo. Feb. 16, 1989), and on October 17, 1989, Jones filed a pro se petition for habeas corpus relief in district court. Jones' petition claimed that the prosecutor discriminated against Jones by improperly using all six peremptory challenges to remove blacks from the jury, that the prosecutor made improper characterizations about Jones during his closing argument to the jury, and that the trial court allowed

---

1. The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri.

the jury to return conflicting verdicts of both first and second degree burglary.

After the district court referred the matter to a United States Magistrate for review and recommendation, Jones filed a motion labeled "PETITIONER'S TRAVERSE AND SUPPLEMENTAL PETITION," in which he amended his original petition by raising, for the first time, an ineffective assistance of counsel claim and two new due process claims.

The magistrate's review addressed Jones' three original claims and the supplemental ineffective assistance of counsel claim all on the merits and recommended denial of the writ.[2] *Jones v. Jones*, No. 89–1945C(1) (E.D.Mo. Feb. 14, 1990) (Magistrate's Review and Recommendation). On March 5, 1990, in a one sentence order, the district court adopted in full the magistrate's review and recommendation. *Jones v. Jones*, No. 89–1945C(1) (E.D.Mo. Mar. 5, 1990).

Jones claims that the district court erred when it denied habeas relief because: (1) the state court finding that the prosecutor offered sufficient, racially neutral explanations for his peremptory strikes is not fairly supported in the record; (2) the prosecutor's prejudicial closing statements were not supported by the evidence, and the trial judge failed to give the jury any curative instruction; (3) the trial court committed reversible error when it accepted inconsistent jury verdicts; and (4) the district court never held an evidentiary hearing or ruled on the merits of his ineffective assistance of counsel claim, despite the fact that the claim was properly before the court. Jones also requests that this court permit him to amend his district court pleading to raise issues he did not raise in district court or that the district court refused to recognize. We address appellant's arguments in order.

## I.

*Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), confirmed that a state prosecutor violates the equal protection clause of the fourteenth amendment if he or she excludes venire members from the jury on the basis of race. *Id.* at 86, 106 S.Ct. at 1717 (citing *Strauder v. West Virginia*, 100 U.S. 303, 305, 25 L.Ed. 664 (1880)). In *Batson*, the Supreme Court explained that to establish a prima facie case of discrimination:

the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

*Id.* 476 U.S. at 96, 106 S.Ct. at 1723 (citations omitted).

"After a defendant establishes a prima facie case, the burden then shifts to the government to 'articulate a neutral explanation related to the particular case to be tried.' The prosecutor must give a "clear and reasonably specific" explanation of his "legitimate reasons" for exercising the challenges.'" *United States v. Jimmie Wilson*, 884 F.2d 1121, 1124 (8th Cir.1989) (en banc) (quoting *Batson*, 476 U.S. at 98 & n. 20, 106 S.Ct. at 1724 & n. 20).

At the close of Jones' voir dire, the prosecutor moved to exercise all six of his peremptory challenges against black venire persons, leaving only one black person to serve on the jury. When Jones' counsel objected to the peremptory challenges, the court asked the prosecutor to state his reasons for the strikes on the record, which he did. Jones' attorney then moved to quash the jury panel,[3] and the court said only one word, "overruled."

---

**2.** The magistrate's order made no mention of Jones' attempt to raise two due process claims.

**3.** Jones said: "I move that the court quash this panel and order a new jury and begin with another voir-dire [sic] because of the State's use

Jones appealed the trial court's refusal to quash the jury, but the Missouri Court of Appeals treated the trial court's statement, "overruled," as an implicit factual finding that there had been no purposeful discrimination. The appeals court reviewed the ruling under the clearly erroneous standard and affirmed, holding that the record supported the trial court's implicit finding. *Jones,* 748 S.W.2d at 900–01. The court also found that the prosecutor's explanations were, on their face, neutral and not frivolous and that defense counsel had made no effort to persuade the trial court that the prosecutor's rebuttal was merely a pretext. *Id.*

On habeas review, the district court adopted the magistrate's review and recommendation, which stated: "[F]Actual [sic] findings reliably and specifically made by a state court are presumed to be correct and are entitled to deference by a federal court." Magistrate's Review at 3.

Jones argues two main points: first, that the state court's *Batson* determinations were mixed findings of law and fact and therefore should not be presumed correct under 28 U.S.C. § 2254(d) (1988); and second, that even if the *Batson* questions are issues of fact, the state court factual finding of no discrimination is not entitled to the section 2254(d) presumption because it is not fairly supported in the record. *See* section 2254(d)(8) (creating an exception to

the general presumption of correctness when petitioner shows "that such factual determination is not fairly supported by the record").

The State makes three arguments. First, it asks this court to hold that Jones' *Batson* claim is not cognizable on federal habeas corpus review because the claim is unrelated to Jones' guilt or innocence and does not question the justness of his incarceration. Second, the State argues that the Missouri Court of Appeals' finding, that the prosecutor's explanations for the strikes were legitimate and neutral, was a finding of historical fact entitled to the section 2254(d) presumption. Third, the State argues that the prosecutor's explanations were neutral and rationally related to the case, and, as such, they are sufficient to rebut Jones' prima facie case of racial discrimination.

### A.

■ We begin by dispensing with two arguments summarily. We reject Jones' claim that a state court *Batson* determination is a mixed finding of law and fact. This argument contradicts plain statements in controlling Supreme Court cases,[4] and is contrary to our frequent conclusion, on direct appeal, that district court *Batson* findings are factual determinations subject to review under the clearly erroneous standard.[5] Jones offers no reason why this

---

of it's [sic] peremptory strikes effectively denies my client the jurors of his peers and a jury in which there is only one black person, and the only reason one black lady is left, the State only got to make six strikes for cause [sic], and they were all black people—" Tr. at 118.

**4.** *Hernandez v. New York,* —— U.S. ——, —— —— ——, 111 S.Ct. 1859, 1868–73, 114 L.Ed.2d 395 (1991) (intent to discriminate is a pure issue of fact entitled to deferential review); *Batson v. Kentucky,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21 ("the trial judge's findings [on a *Batson* issue] largely will turn on evaluation of credibility, [and] a reviewing court ordinarily should give those findings great deference"); *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) ("a finding of intentional discrimination is a finding of fact"); *Wainwright v. Witt,* 469 U.S. 412, 428–29, 105 S.Ct. 844, 854, 83 L.Ed.2d 841 (1985) ("a trial judge's finding that a particular venireman

was not biased ... was a finding of fact subject to § 2254(d)").

**5.** *See, e.g., United States v. Moore,* 895 F.2d 484, 485 (8th Cir.1990) (trial court's ruling whether defendant has made a prima facie *Batson* case should be reviewed as a finding of fact entitled to great deference, and subject to reversal only on showing of clear error); *United States v. Biaggi,* 853 F.2d 89, 96 (8th Cir.1988) ("district court findings as to the motivations of the prosecution in exercising its peremptory challenges must be upheld unless they are clearly erroneous"); *United States v. Cloyd,* 819 F.2d 836, 837–38 (8th Cir.1987) (giving great deference to district court determination that government rebutted appellant's prima facie case). *But see United States v. George Wilson,* 867 F.2d 486 (8th Cir.1989) (deciding whether, as a matter of law, the justifications offered by the prosecutor are clear, race-neutral explanations that relate to the case).

court should treat the identical question—whether trial court *Batson* determinations are findings of fact or mixed findings of law and fact—differently on habeas review than we do on direct appeal.

 We also reject the State's contention that this court should refuse to consider *Batson* claims on habeas review. In *Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), the Supreme Court declined to apply the *Batson* rule retroactively to a case on federal habeas review. *Id.* at 259–61, 106 S.Ct. at 2880–81. *See Garrett v. Morris*, 815 F.2d 509, 511 (8th Cir.1987). While *Allen* is decided in a different context, the Supreme Court's analysis presupposes the availability of habeas review of *Batson* claims.

### B.

 Section 2254(d) sets out the habeas standard for reviewing state court findings of fact.[6] These findings are presumed to be correct unless one of eight conditions is met. The presumption, however, only applies to state court findings of fact. A habeas court is free to conduct an independent review of state court conclusions of law, or determinations on mixed questions of law and fact. *Cuyler v. Sullivan*, 446 U.S. 335, 342, 100 S.Ct. 1708, 1714, 64 L.Ed.2d 333 (1980) (mixed determinations of law and fact are reviewable on collateral attack); *Grooms v. Solem*, 923 F.2d 88, 90 (8th Cir.1991) (mixed questions of law and fact are not subject to section 2254(d) presumption). The most pressing question is whether there have been any state court factual findings in this case.

 The Missouri Court of Appeals gleaned, from the word "overruled," an implicit trial court finding that: (1) Jones

made out a prima facie case of intentional discrimination, and (2) the prosecutor's explanations rebutted Jones' prima facie case, shifting the burden back to Jones to show that the reasons the prosecutor offered were pretextual.[7] The State's brief takes the same position, stating: "The trial court found that the prosecutor articulated a neutral explanation for his peremptory strikes that was related to the particular case to be tried."

The section 2254(d) presumption only applies to factual determinations made after a hearing on the merits and "evidenced by a written finding, written opinion, or other reliable and adequate written indicia." Section 2254(d). While the trial transcript indicates that the trial judge conducted a *Batson* inquiry, we are not satisfied that the trial court made any factual determinations. To the extent the trial judge intended to make factual findings, the only indication it made was the one word "overruled," spoken in open court and duly recorded. There is a fundamental difference between a ruling on a motion, essentially a legal determination, and a finding of fact. We do not believe section 2254(d) applies to this trial court ruling.

 Our conclusion above does not end the inquiry. The section 2254(d) presumption "applies to factual determinations made by state courts, whether the court be a trial court or an appellate court." *Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981) (subsequent history omitted). The statute "makes no distinction between the factual determinations of a state trial court and those of a state appellate court." *Id.* at 546, 101 S.Ct. at 769. Thus, *Sumner* requires us to also consider whether the Missouri Court of Ap-

---

6. Section 2254(d) states:

> [A] determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall

> otherwise appear, or the respondent shall admit—
>
> . . . .
> (8) ... that such factual determination is not fairly supported by the record.

7. The Missouri Court of Appeals stated: "The trial court implicitly found there had been no purposeful discrimination when, without comment, it denied defendant's motion to quash." *Jones,* 748 S.W.2d at 900.

peals made any finding of fact regarding the prosecutor's peremptory challenges.

The Missouri Court of Appeals upheld the trial court's implicit finding with respect to each struck venire member under the clearly erroneous standard and stated its legal conclusions in language such as "the conclusion is not clearly erroneous," "we defer to that finding," or "we find no error." *Jones,* 748 S.W.2d at 900–01. *Sumner* does not require us to apply the section 2254(d) presumption to these legal conclusions.

■ After reviewing each of the six strikes, the Missouri Court of Appeals made two findings of fact. It first found that "[t]he record before us supports the State's assertion that the reasons it gave for having exercised the challenges in question were, on their face at least, neutral and not frivolous." *Jones,* 748 S.W.2d at 901. The court also found "that defendant made no attempt to persuade the trial court that the reasons were merely a pretext for discrimination." *Id.* The court reached these findings after a complete review of the transcript, and evidenced them in a written opinion. Thus, they are entitled to the section 2254(d) presumption.

■ The appeals court's first finding, that the prosecutor's explanations were race neutral and not frivolous, is amply supported in the record. The court of appeals carefully discussed the explanation for each strike, and we need not reproduce that discussion here. It suffices to say that none of the prosecutor's explanations implicated race, and taking into account the section 2254(d) presumption, we will not overturn the state court's finding.

■ Jones does not challenge the Missouri Court of Appeals' second finding, that defense counsel did not offer any evidence of pretext after the prosecutor ex-plained the reasons for his peremptory strikes. The voir dire transcript verifies that immediately following the prosecutor's explanations, defense counsel moved to quash the jury without raising the issue of pretext. *See supra* note 3. Likewise, defense counsel's written motion for a new trial, in which he preserved the issue for appeal, makes no argument about pretext.[8]

Jones now argues that although the prosecutor's reasons may appear neutral on their face, the reasons given applied with equal force to non-black venire members whom the prosecutor did not strike. Jones argues that inconsistent treatment establishes that the prosecutor's explanations were merely a pretext for racial discrimination. He cites *Garrett v. Morris,* 815 F.2d 509, 513–514 (8th Cir.1987), and *Walton v. Caspari,* 916 F.2d 1352 (8th Cir.1990), for the proposition that on habeas appeal this court should look behind facially neutral explanations to determine whether the explanations are pretextual.

Jones describes *Garrett* and *Caspari* as habeas corpus proceedings in which the Eighth Circuit "overturned state trial court rulings denying *Batson* claims." Neither case involved a state court *Batson* determination. Both cases involved claims of racial discrimination in the selection of the petit jury, and both were appeals from denial of habeas petitions, but both involved criminal proceedings that became final before the Supreme Court decided *Batson,* and both held *Batson* to be inapplicable. *Garrett,* 815 F.2d at 511; *Caspari,* 916 F.2d at 1358.

In *Batson,* the Supreme Court expressly declined "to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges." *Batson,* 476 U.S. at 99, 106 S.Ct. at 1724–25. Instead, the court explained that "[i]n light of the variety of jury selec-

---

**8.** Paragraph eight of Jones' motion for new trial stated:

> The trial court committed reversible error when it denied defense counsel's motion to quash the jury panel and pick a new jury because the prosecutor used his six peremptory strikes to remove six black persons from the jury panel. The defendant is a black man.

> The prosecutor used his peremptory strikes to remove as many blacks from the main panel as possible. As a result of the prosecutor's peremptory strikes, only one of the jurors who served on the jury was black. By denying defendant's request, the court denied the defendant a fair and impartial jury of his peers and equal protection of the laws.

tion practices followed in our state and federal trial courts, we make no attempt to instruct these courts how best to implement our holding today." *Id.* at 99 n. 24, 106 S.Ct. at 1725 n. 24. This language requires reviewing federal courts to respect state court procedures for treating *Batson* challenges.

Before Jones' trial, the Missouri Supreme Court had announced the following procedure for dealing with *Batson* claims:

Defendant's establishment of a prima facie case creates a rebuttable presumption that the prosecutor exercised his peremptory challenges in a discriminatory manner. The burden of production then shifts to the State to rebut the presumption of discrimination by coming forward with a neutral explanation for challenging black jurors. The proffered neutral explanation "must give a 'clear and reasonably specific' explanation of the state's 'legitimate reason' for exercising the challenges."

If the State comes forth with a neutral explanation, "the presumption raised by the prima facie case is rebutted [footnote omitted] and the factual inquiry proceeds to a new level of specificity." Defendant now has the obligation to demonstrate that the State explanations are merely pretextual and, thus, not the true reason for the use of the State's peremptory challenges.

*State v. Antwine,* 743 S.W.2d 51, 64 (Mo. 1987) (en banc) (citations omitted). Jones does not argue that this analytical framework is erroneous.[9]

After Jones made a prima facie case, the burden of production (but not of persuasion) shifted to the prosecutor. When the prosecutor rebutted the prima facie case with facially neutral explanations, the burden shifted back to Jones to demonstrate that the prosecutor's reasons were merely a pretext for discrimination. The Missouri Court of Appeals recognized this requirement when it explained:

The ultimate burden of persuasion, however, lies with, and never shifts from the defendant. *State v. Antwine,* 743 S.W.2d 51, 63 (Mo. banc 1987). Thus, if the State rebuts the inference of discrimination with neutral explanations for having exercised its peremptory challenges, the defendant's motion to quash the jury can succeed only if the defendant persuades the trial court that the State's explanations are a pretext for discrimination.

*Jones,* 748 S.W.2d at 899. After the prosecutor offered his explanations, the factual inquiry rose to a new level of specificity. *Antwine,* 743 S.W.2d at 64. Under Missouri law, the burden of persuasion remained with Jones, and Jones had an opportunity to argue that the prosecutor's facially neutral explanations were merely a pretext for discrimination.

The transcript confirms that once the prosecutor gave his reasons for striking each of the six jurors, Jones's attorney offered no additional argument, but only moved to quash the jury. The trial court was not required to consider pretext when the issue was not raised.

The district court did not err in denying habeas relief on this issue.

## II.

■ Jones argues that he was denied due process because twice during closing argument the prosecutor suggested to the jury that burglary was Jones' occupation.[10] We have held that in order to make out a cognizable claim of prosecutorial misconduct:

[t]he petitioner must show that the alleged improprieties were "so egregious

---

9. Missouri's approach is consistent with this circuit's approach when reviewing district court *Batson* determinations. *United States v. George Wilson,* 816 F.2d 421, 423 (8th Cir.1987); See also, *Jimmie Wilson,* 884 F.2d at 1124.

10. The prosecutor first said, "[appellant's counsel] says ... how could anybody be so dumb as to work—drive to work in their car—", (Tr. at

245) and then later, "Consider the burglar who committed this crime. The burglar is a good burglar in that; [sic] he's a professional—." (Tr. at 248) Defense counsel objected to both of the prosecutor's characterizations and the trial judge sustained the first but overruled the second objection.

that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." Under this standard, a petitioner must show that there is a "reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety, the verdict probably would have been different."

*Blair v. Armontrout*, 916 F.2d 1310, 1324 (8th Cir.1990) (citations omitted) (quoting *Newlon v. Armontrout*, 885 F.2d 1328, 1336–37 (8th Cir.1989), *cert. denied sub nom., Delo v. Newlon*, — U.S. —, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990)).

The magistrate's review, which the district court adopted, concluded that Jones' allegations did not amount to error "so prejudicial or of such magnitude as to fatally infect the trial." Magistrate's Review at 3. We conclude that the district court did not err, and would only add that Jones has made no showing that absent the alleged impropriety, the verdict probably would have been different.

### III.

 Jones claims that after the jury foreman mistakenly signed the verdict forms for both first and second degree burglary, the state trial court committed reversible error by accepting inconsistent guilty verdicts.

In *United States v. Howard*, 507 F.2d 559 (8th Cir.1974), this court explained that inconsistent verdicts arise " 'where a guilty verdict on one count negatives some fact essential to a finding of guilty on a second count....' " *Id.* at 561 n. 4. Second degree burglary is a lesser included offense within first degree burglary. As we stated in *Howard*, "a finding of guilty on the lesser offense[ ] as well as the major offense[ ] creates per se no inconsistency in conclusions; in finding the defendant guilty of the major offense[ ] the jury must necessarily have concluded that all of the elements of the lesser included offense[ ] were present." *Id.* at 563. Thus, even if the jury did return verdicts of both first and second degree burglary, the mistake did not result in inconsistent verdicts.

We need not reach the question of how to resolve dual verdicts, however, because the Missouri Court of Appeals concluded, as a factual matter, that the jury foreman's signature on the verdict form for the lesser included offense of second degree burglary was mere surplusage, *Jones*, 748 S.W.2d at 902–03, and the record amply supports this conclusion. Midway through its deliberations, the jury indicated to the court, in writing, "we vote guilty on Count I guilty of burglary in the 1st Degree." After the jury returned from deliberating, the trial judge read the verdict of first degree burglary aloud, and "each juror, upon being asked 'Is the verdict I have just read your verdict?', responded that it was." *Id.* at 903. Finally, at the sentencing hearing, petitioner Jones admitted "yes" when the trial court asked him whether he remembered his trial in which the jury found him guilty of first degree burglary. Based on this information, the magistrate accepted the appeals court's finding, that the second degree burglary verdict was mere surplusage, as a factual finding, and presumed it correct under section 2254(d). Magistrate's Review at 3.

The record overwhelmingly supports the appeals court's conclusion, and the district court correctly denied the habeas claim.

### IV.

 In his traverse, Jones claimed for the first time that he was denied effective assistance of counsel because:

(A) Trial counsel failed to file a proper motion to suppress identification;

(B) Trial counsel failed to file a proper motion for discovery and/or disclosure;

(C) Trial counsel failed to communicate adequately with Petitioner before or during trial in that he spoke with petitioner only twice within a period of one (1) year, and this included trial procedures;

(D) Trial counsel failed to call key witnesses despite Petitioner's repeated requests that he do so. Had these witnesses been called to testify for Petitioner, the trial outcome could have been altered dramatically ...

The magistrate's review and recommendation evaluated these ineffective assistance of counsel claims on the merits, and dismissed them, concluding: "[P]etitioner has failed to show counsel's performance was deficient, and therefore, failed to meet the first prong of the *Strickland* test." Magistrate's Review at 5. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) ("defendant must show that counsel's performance was deficient").

Shortly after the district court adopted the magistrate's recommendation in full, Jones filed objections in which he reasserted that defense counsel had failed "to interview and subpoena key witnesses whose testimony would have greatly influenced the outcome of the trial and might very well have resulted in a different verdict." The objections also renewed the claim that counsel was ineffective because he only met with Jones twice before trial, and because he did not contest Jones' arrest as unlawful, or file a motion to suppress identification. The objections raised a new claim that counsel was ineffective for failing to pursue his initial objection to the prosecutor's statements during closing arguments by asking for a curative jury instruction.[11]

The district court then issued a second order stating "[p]etitioner's objections to the magistrate's treatment of the merits of his petition do not warrant a reversal of the Court's earlier order." *Jones v. Jones*, No. 89–1945C(1), slip op. at 1 (E.D.Mo. Mar. 20, 1990). We interpret this language as a ruling on the merits against the supplemental ineffective assistance of counsel arguments. The objections did not make out a case under *Strickland.* Accordingly, we reject Jones' claims.

### V.

We deny Jones' final request that we remand the case so that he can refine his pleadings and add additional issues that he did not raise in any previous pleading before the district court. Petitioner acknowl-

edged in his brief the well established general rule that federal appellate courts will only consider issues raised in the district court and this case does not warrant an exception to that rule. *Morrow v. Greyhound Lines, Inc.*, 541 F.2d 713, 724 (8th Cir.1976).

### VI.

For all of the reasons stated above, we affirm the district court's denial of a writ of habeas corpus.

---

**11.** Defense counsel began to ask the court to instruct the jury to disregard the prosecutor's statements, but was cut off, and never renewed the request.