—————————

No. 95-2144

—————————

James Gibson,                          *
                                       *
            Appellant,                 *
                                       *   Appeal from the United States
     v.                                *   District Court for the
                                       *   Eastern District of Missouri.
Michael Bowersox,                      *
                                       *
            Appellee.                  *

—————————

            Submitted:  December 15, 1995

               Filed:  March 11, 1996
—————————

Before MAGILL, BRIGHT, and MURPHY, Circuit Judges.

—————————

MAGILL, Circuit Judge.


     James Gibson appeals the district court's[1] denial of a writ of habeas corpus under 28 U.S.C. § 2254, arguing that the state failed to prove every element of his drug trafficking offense beyond a reasonable doubt because it tested an inadequate sample of cocaine base, and that the state impermissibly used peremptory strikes against African-American venirepersons.  We affirm.

_____

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri, adopting the report and recommendation of the Honorable Catherine D. Perry, formerly United States Magistrate Judge for the Eastern District of Missouri, since appointed United States District Judge for the Eastern District of Missouri.

## I.

On May 23, 1991, St. Louis, Missouri police officers Mark Grman and John Winter observed appellant James Gibson, an African-American, drop a paper cup to the ground. When asked by the officers to pick up his litter, Gibson denied having dropped the cup. Upon investigating, the officers found that the cup contained pieces of what appeared to be cocaine base, and placed Gibson under arrest.

Gibson was tried before a jury in Missouri state court. During voir dire, the state used all of its peremptory challenges to strike seven African-Americans from the jury, giving as reasons either that the venirepersons had relatives who had been prosecuted or convicted for criminal offenses, had work schedules which conflicted with jury service, or equivocated over their ability to follow jury instructions. During trial, the state presented evidence from criminalist Mary Taylor that a sample of the material in the cup tested positive for the presence of cocaine base, and that all of the material in the cup had a uniform texture and color. The total weight of the material in the cup was 3.69 grams, although the piece tested by Taylor weighed less than 2 grams. The jury convicted Gibson for trafficking drugs in the second degree, Mo. Rev. Stat. § 195.223.3(1) (possession of more than two grams of a substance containing cocaine base), and he was sentenced to ten years imprisonment. Gibson's conviction was affirmed on appeal to the Missouri Court of Appeals; see State v. Gibson, 856 S.W.2d 78 (Mo. App. 1993).

## II.

Gibson first argues that the state failed to prove beyond a reasonable doubt that he possessed in excess of two grams of cocaine base, because the sample tested by Taylor weighed less than two grams. On collateral review of the evidentiary sufficiency of

a state court conviction, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Haymon v. Higgins, 846 F.2d 1145, 1146 (8th Cir. 1988) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). In this case, the state did not have to test every particle of the cocaine base to prove its nature; indeed, "[p]roof of the existence of a controlled substance need not be by direct evidence" at all, United States v. Meeks, 857 F.2d 1201, 1204 (8th Cir. 1988). We have "affirmed the use of random testing to establish that a substance contains cocaine base" for sentencing purposes, United States v. Johnson, 944 F.2d 396, 404-06 (8th Cir.), cert. denied, 502 U.S. 1008 (1991), and hold that this method is also valid to prove the elements of an offense. The evidence presented to the jury in this case, including the test results of a sample of the material possessed by Gibson and testimony that all of the material was similar in texture and color, was sufficient to prove that Gibson possessed in excess of two grams of cocaine base beyond a reasonable doubt.

## III.

Gibson next argues that the state violated Batson v. Kentucky, 476 U.S. 79 (1986), by striking African-Americans from the jury because of their race. We apply a three-part analysis to a Batson claim. See Purkett v. Elem, 115 S. Ct. 1769, 1770-71 (1995) (per curiam). Assuming that Gibson has made a prima facie case of racial discrimination, step one in our analysis, we conclude that at step two the state successfully rebutted that prima facie case by stating race-neutral reasons for its use of peremptory strikes; see id. at 1771. We note that, at this stage, a court does not weigh the plausibility of the reasons given by the state, but merely determines whether the reasons are facially race-neutral. It is only at step three that "the persuasiveness of the justification becomes relevant--the step in which the trial court

-3-

determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." <u>Id.</u> At this step, "implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." <u>Id.</u> However, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." <u>Id.</u> Whether a race-neutral explanation is pretextual for discrimination is a question of fact, <u>see</u> <u>Jones v. Jones</u>, 938 F.2d 838, 841 (8th Cir. 1991), and in "habeas proceedings in federal courts, the factual findings of state courts are presumed to be correct, and may be set aside, absent procedural error, only if they are 'not fairly supported by the record.'" <u>Purkett</u>, 115 S. Ct. at 1771 (quoting 28 U.S.C. § 2254(d)(8)). We conclude that the state courts' factual findings that the state's racially-neutral reasons were not a pretext for discrimination were amply supported by the record, and that the district court did not err in denying Gibson's petition for a writ of habeas corpus.

Accordingly, we affirm the judgment of the district court.

BRIGHT, Circuit Judge, concurring.

I write separately to emphasize the crucial importance of the trial judge's fact finding function as it relates to the <u>Batson v. Kentucky</u>, 476 U.S. 79 (1979), jurisprudence. Preliminarily, it is well to recall the underpinnings for limiting peremptory strikes in jury selection. In <u>Swain v. Alabama</u>, 380 U.S. 202 (1965), a case preceding <u>Batson</u>, the United States Supreme Court recognized that "a State's purposeful or deliberate denial to Negroes on account of race of participation as jurors in the administration of justice violates the Equal Protection Clause." <u>Id</u>. at 203-204. The <u>Batson</u> Court reaffirmed that principle.

Additionally, the Court in <u>Batson</u> stated:

The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice. . . . Discrimination within the judicial system is most pernicious because it is `a stimulant to that race prejudice which is an impediment to securing to [black citizens] that equal justice which the law aims to secure to all others.' Strauder [v. West Virginia], 100 U.S. [303], 308 (1880).

Id. at 87-88.

Under Batson, once the defendant makes a prima facie case the prosecutor (or proponent of the peremptory strike) must articulate a neutral explanation relating to the case to be tried. Id. at 98. That articulation must be "clear and reasonably specific". See, id. at 98 n.20. In the context of an objection to a peremptory strike, the court will usually act with promptness, often at a bench conference outside the hearing of the jury.

The showing of pretext usually will not call for any evidence, but rather argument and reference to the voir dire of the jury. The reason offered by the prosecutor or proponent of the strike need not be accepted by the court at stage three (pretext) of the proceeding.

As observed in Purkett v. Elem, 115 S. Ct. 1769 (1995), impossible, fantastic, silly or superstitious justifications may and probably will be found pretextual. Id. at 1771.

Where, as in this case, the proponent of the strikes utilizes all seven peremptory challenges to strike African-Americans from the jury, a fact finder could be justified in rejecting, as pretextual at stage three of the proceedings, the race neutral reasons offered by the prosecutor. Moreover, utilizing all peremptory challenges against minority persons presumptively

-5-

strikes at the very heart of the <u>Batson</u> rule--that a person shall not be deprived by reasons of race of the privileges and obligations of citizenship in serving as a juror.

The seven African-Americans who were stricken may well have believed that race underlay their rejection, regardless of the prosecutor's reasons provided to the trial judge. When a prosecutor utilizes all peremptory strikes against only African-American citizens, the reasons offered will often carry a hollow sound of pretext, and a trial judge might look at these reasons with a jaundiced eye and reject them as pretextual.

However, the state trial judge here honored the strikes in this case and the Missouri courts approved of that action as not violative of <u>Batson</u>. In a habeas case, the federal courts must presume such findings to be correct if there is support in the record. And, as noted by the opinion of the majority, some evidence does support the strikes. I would add, however, that a contrary finding by the trial judge could have been easily justified in the circumstances of this case.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.