# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3443
_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Trinity Edward Ingle, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: April 14, 1998
Filed: October 8, 1998

_____

Before RICHARD S. ARNOLD, Chief Judge,[*] LAY and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

A jury convicted Trinity Edward Ingle of aiding and abetting a first degree murder and the use of a firearm during and in relation to a crime of violence. See 18 U.S.C. §§ 1111(a), 924(i)(1), and 2. The district court[1] sentenced Ingle to life in prison

_____

[*]The Honorable Richard S. Arnold stepped down as Chief Judge on April 17, 1998, succeeded by the Honorable Pasco M. Bowman, II.

[1]The Honorable Jimm Larry Hendren, Chief Judge of the United States District Court for the Western District of Arkansas.

without possibility of release. He appeals, arguing (1) the district court erred in admitting his tape-recorded incriminating statements to other inmates; (2) the court erred in denying him a government-financed rhetorician to provide expert testimony as to the voluntariness of those statements; and (3) the court erred in admitting photographs of the victim's body. We affirm.

In June 1995, the body of 82-year-old Sherman Williams was found in Hot Springs National Park. Ingle became a suspect in the murder. In January 1996, FBI agent Thomas Ross obtained palm prints and hair samples from Ingle at an Arkansas correctional facility in West Memphis, where he was being held on an unrelated state charge. Ingle declined Ross's invitation to give a statement about the murder. Later that month, Ross visited again, and Ingle agreed to be transported to the Western District of Arkansas to speak with FBI agents and, if called, to appear before the federal grand jury investigating the murder. After Ingle arrived in Fort Smith, he was detained at the nearby Crawford County jail. A magistrate judge appointed the Federal Public Defender to represent Ingle "in all further proceedings herein." Ingle conferred with counsel and then refused to talk with the FBI or to testify before the grand jury.

While at the Crawford County jail, Ingle confided to a cellmate, Derrick Bell, that he had participated in a Hot Springs murder. Bell or Ingle also told another inmate, Jonah Jones, who had previously assisted the FBI. Jones informed a local agent of Ingle's admissions and agreed to try to get a tape-recorded statement from Ingle about the Sherman Williams murder. On April 3, 1996, Jones and Bell discussed the murder with Ingle in a Crawford County jail cell, with Jones wearing a recording device provided by the FBI. Ingle made incriminating admissions and was subsequently charged with aiding and abetting the murder. The district court denied his motion to suppress the tape-recorded conversation. That ruling is the principal issue on appeal.

# I. Denial of Ingle's Motion To Suppress.

Ingle argues that evidence of his April 3, 1996, tape-recorded conversation with Jones and Bell should have been suppressed because the government violated his Fourth, Fifth, and Sixth Amendment rights in eliciting these incriminating admissions.[2]

## A. Voluntariness.

Ingle argues the tape-recorded admissions should be suppressed as involuntary because Jones and Bell were acting as government agents and Ingle's will was overborne by their coercive and manipulative tactics at a time when Ingle was under the influence of methamphetamine. We review the district court's findings for clear error and its voluntariness determination de novo, considering "all the circumstances surrounding the giving of the confession." 18 U.S.C. § 3501(b); see United States v. Bordeaux, 980 F.2d 534, 538-39 (8th Cir. 1992).

When a defendant's will is overborne by coercive police activity, the resulting confession is inadmissible. This rule applies even if coercion is employed by an undercover agent who befriends and then interrogates the defendant in prison. See Arizona v. Fulminante, 499 U.S. 279 (1991). Here, the district court acknowledged that Jones and Bell engaged Ingle in a tape-recorded conversation at the government's behest, but the court rejected Ingle's contention that his fellow inmates were acting as government agents. We do not address that issue because we agree with the court's

---

[2]Ingle also argues the district court abused its discretion in admitting the tape because it is in part unintelligible. The court concluded the unintelligible portions do not cast doubt on the trustworthiness of the entire tape. That is the correct standard, see United States v. Huff, 959 F.2d 731, 737 (8th Cir.), cert. denied, 506 U.S. 855 (1992), and there was no abuse of the court's substantial evidentiary discretion.

alternative ground, that Jones and Bell did not coerce Ingle's admissions. The court based this conclusion on the magistrate judge's findings that:

> No evidence was presented at the hearing indicating that [Ingle] was threatened or intimidated by Jones, Bell or anyone else with respect to his inculpatory statements. [Ingle] was not confined to the cell and was free to terminate the conversation at any time. [Ingle] was not intoxicated nor under the influence of any drug when he made the subject statements, nor is there evidence that alcohol or drugs were ever in [Ingle's] possession in the Crawford County Jail.

We have reviewed the testimony at the suppression hearing and at trial and conclude these findings are not clearly erroneous. Ingle was unaware that Jones was cooperating with the FBI, and the transcript of the conversation with Jones and Bell gives no indication Ingle felt intimidated by them or by his surroundings. The fact that the government encouraged the conversation, and Ingle's attempt to pass off his incriminating statements as "jailhouse bluster," do not establish the kind of coercive police activity that renders a confession involuntary. See Colorado v. Connelly, 479 U.S. 157, 163-67 (1986). "[Q]uestioning tactics such as a raised voice, deception, or a sympathetic attitude on the part of the interrogator will not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne." Jenner v. Smith, 982 F.2d 329, 334 (8th Cir.), cert. denied, 510 U.S. 822 (1993).

## B. The Miranda Issue.

Ingle argues his tape-recorded statement was inadmissible because Jones and Bell subjected him to custodial interrogation without giving the warnings required by Miranda v. Arizona, 384 U.S. 436 (1966). Like the district court, we disagree. In Illinois v. Perkins, 496 U.S. 292, 300 (1990), the Supreme Court held that an incarcerated suspect is not entitled to Miranda warnings prior to questioning by an

undercover agent posing as an inmate. "It is the premise of <u>Miranda</u> that the danger of coercion results from the interaction of custody and official interrogation," the Court explained. "Ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within <u>Miranda's</u> concerns." <u>Id.</u> at 297. Likewise, <u>Miranda</u> does not apply to a conversation between Ingle and two fellow inmates who had been encouraged by the government to elicit incriminating admissions. <u>See</u> <u>Salkil v. Delo</u>, 990 F.2d 386, 387 (8th Cir. 1993).

## C.  Sixth Amendment Issues.

Ingle argues his Sixth Amendment right to the assistance of counsel was violated when Jones and Bell questioned him outside the presence of his court-appointed attorney. This clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This Sixth Amendment right "requires the existence of both a 'criminal prosecutio[n]' and an 'accused.'" <u>United States v. Gouveia</u>, 467 U.S. 180, 188 (1984). Thus, the right "does not attach until after the initiation of formal charges." <u>Moran v. Burbine</u>, 475 U.S. 412, 431 (1986). More specifically, it attaches "at or after the initiation of adversary judicial criminal proceedings -- whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." <u>Gouveia</u>, 467 U.S. at 188, <u>quoting</u> <u>Kirby v. Illinois</u>, 406 U.S. 682, 689 (1972) (plurality opinion).

Applying this principle, it seems clear that if Ingle had been formally charged with Sherman Williams's murder prior to April 3, 1996, the government would have violated his Sixth Amendment right to counsel by deliberately arranging to have Jones and Bell elicit incriminating admissions in the absence of Ingle's court-appointed attorney. <u>See</u> <u>Maine v. Moulton</u>, 474 U.S. 159, 170 (1985); <u>United States v. Henry</u>, 447 U.S. 264 (1980); <u>Massiah v. United States</u>, 377 U.S. 201 (1964). But Ingle was not initially charged with first degree murder until May 14, 1996. Ingle argues the right to counsel may attach before the filing of a formal charge. However, "looking to the

initiation of adversary judicial proceedings, far from being mere formalism, is fundamental to the proper application of the Sixth Amendment right to counsel." Moran, 475 U.S. at 431.

In Illinois v. Perkins, 496 U.S. at 299, the Court held that the Sixth Amendment right to counsel did not attach when an undercover agent questioned defendant in his cell because "no charges had been filed on the subject of the interrogation." Likewise, in Salkil, 990 F.2d at 387, we held that the Sixth Amendment was not violated when an uncharged suspect made incriminating statements to a cellmate who was cooperating with the police. Ingle attempts to distinguish these cases because here the court appointed him an attorney for "all further proceedings herein" some five weeks before the taped conversation. Given the purposes for which Ingle had consented to be brought to Fort Smith -- custodial interrogation and possible testimony before the grand jury -- appointed counsel was needed to protect the Fifth Amendment ban on compelled self-incrimination. But neither custodial interrogation nor a grand jury appearance triggers the Sixth Amendment right to counsel absent the initiation of formal charges, even if the target of those investigative actions is represented by counsel. Nor do such formal investigative actions preclude government investigators from thereafter using informants and undercover agents to elicit incriminating admissions from the suspect. See United States v. Fitterer, 710 F.2d 1328, 1333 (8th Cir.), cert. denied, 464 U.S. 852 (1983); United States v. Dobbs, 711 F.2d 84, 85 (8th Cir. 1983); accord United States v. Myers, 123 F.3d 350, 359 (6th Cir.), cert. denied, 118 S. Ct. 611 (1997); United States v. Vasquez, 675 F.2d 16, 17 (2d Cir. 1982).

The existence of a suspect's attorney-client relationship does not, by itself, trigger the Sixth Amendment right to counsel. Moran, 475 U.S. at 430. In this case, neither the fact that counsel was appointed for Ingle nor the standard form of appointment order used by the court establishes that the murder investigation had proceeded to the point where the Sixth Amendment right to counsel must attach because "the government has committed itself to prosecute, and . . . defendant finds

-6-

himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." Moulton, 474 U.S. at 170 (quotation omitted). Accordingly, the district court correctly concluded that the tape-recorded conversation did not violate Ingle's Sixth Amendment right to counsel.

Ingle also argues that admission of the tape violated his Sixth Amendment Confrontation Clause rights. This contention is without merit. Bell and Jones testified at Ingle's trial. "[T]he Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." Ramsey v. Bowersox, 149 F.3d 749, 755 (8th Cir. 1998).

### D. A Fourth Amendment Issue.

Ingle argues the tape-recorded conversation must be suppressed because he had a reasonable expectation of privacy in the closed-door jailhouse conversation and thus it was the product of an unreasonable search and seizure. We disagree. The Fourth Amendment does not "protect[] a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." Hoffa v. United States, 385 U.S. 293, 302 (1966); see United States v. Sileven, 985 F.2d 962, 966 (8th Cir. 1993). Ingle was relying, not on the privacy of the jail cell, but on his mistaken assumption that fellow inmates Jones and Bell would not reveal what he told them. The Fourth Amendment does not protect that expectation.

For the foregoing reasons, we conclude the district court properly denied Ingle's motion to suppress evidence of his tape-recorded conversation with Jones and Bell.

## II. Denial of an Expert Rhetorician.

Ingle argues the district court abused its discretion in denying his motion for authorization to hire a rhetorician at government expense to serve as an expert witness on the issue of the voluntariness of his admissions to Bell and Jones.[3] An indigent defendant who seeks to obtain expert services at government expense bears the burden of showing that the services are "necessary" to his defense. 18 U.S.C. § 3006A(e); see United States v. Valverde, 846 F.2d 513, 517 (8th Cir. 1988). Ingle argued to the district court that it was reasonably necessary to have a rhetorician "analyze the dynamics of human speech" on the tape recording and testify as to whether Ingle's inculpatory statements were voluntary. Noting that no prior criminal case supports authorizing an expert for this purpose, the district court concluded that Ingle had failed to establish that the rhetorician's testimony would assist the trier of fact on this issue. We agree.

Expert testimony is admissible if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. A significant problem with Ingle's theory is that he proposed an expert on the issue of voluntariness, and that is an issue for the court, not the jury. See 18 U.S.C. § 3501(a). We can hardly reject as an abuse of discretion the district court's conclusion that a rhetorician's opinion would not have helped the court make its determination as to voluntariness. Ingle responds by suggesting that the evidence might have helped him persuade the jury that his tape-recorded admissions were unreliable. That suggestion is inherently implausible. Moreover, linguistic issues of this kind have often been found inappropriate for expert testimony. See United States v. Carr, 965 F.2d 408, 412 (7th Cir. 1992); United States v. Evans, 910 F.2d 790, 803 (11th Cir. 1990), aff'd, 504 U.S.

---

[3]A rhetorician is a master or teacher of rhetoric, the art of expressive speech or discourse. See Webster's Third New International Dictionary p. 1946 (1986).

255 (1992); Valverde, 846 F.2d at 517. We conclude the district court did not abuse its discretion in denying authorization for the services of a rhetorician.

### III. Admission of Murder Victim Photos.

Finally, Ingle challenges the district court's refusal to exclude photographs of the murder victim taken at the crime scene and during the autopsy. Ingle argues the photos served only to inflame the passions of the jurors, making this evidence unfairly prejudicial under Federal Rule of Evidence 403. This contention understates the photos' probative value. They were admitted not only to show how the victim died, but also to corroborate the testimony of Bell and Jones, to demonstrate the extent of Ingle's knowledge of the details of the crime, and to assist the jury in understanding the medical examiner's testimony. The district court admitted the photos after concluding they were relevant and not unfairly prejudicial or inflammatory. "A trial court has discretion to admit a relevant photograph unless it is so gruesome or inflammatory that its prejudicial impact substantially outweigh[s] its probative value." United States v. Davidson, 122 F.3d 531, 538 (8th Cir.) (quotation omitted), cert. denied, 118 S. Ct. 639 (1997), 118 S. Ct. 1329 (1998). The district court did not abuse its substantial discretion by admitting the crime scene and autopsy photographs.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-9-