# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 03-1086

———————

Jeremaine Perry,

        Appellant,

     v.

Michael Kemna,

        Appellee.

\*   Appeal from the United States
\*   District Court for the Western
\*   District of Missouri.

———————

Submitted:   September 11, 2003

Filed:   January 30, 2004

———————

Before MORRIS SHEPPARD ARNOLD, BEAM, and BYE, Circuit Judges.

———————

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Jeremaine Perry was convicted in state court of second-degree murder and sentenced to life imprisonment. After exhausting his state post-conviction remedies, Mr. Perry filed a petition under 28 U.S.C. § 2254. The district court[1] denied Mr. Perry's petition but granted him a certificate of appealability on one of his claims, and we then granted him a certificate of appealability on the four additional claims addressed in this appeal. We affirm the district court in all respects.

---

[1]The Honorable Dean Whipple, Chief Judge, United States District Court for the Western District of Missouri.

## I.

In an appeal from a judgment on a § 2254 petition, "[w]e review the district court's findings of fact for clear error and its conclusions of law de novo." *Taylor v. Bowersox*, 329 F.3d 963, 968 (8th Cir. 2003). "[W]ith respect to any claim" that the state court "adjudicated on the merits," we will grant relief only if that court's decision is "contrary to, or involve[s] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or is "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).

## II.

Samuel Duke, Sr., Mr. Perry's grandfather, was shot twice in the head on January 2, 1993, and died that day. Mr. Perry, who was fifteen years old at the time, was arrested as a suspect in the murder, and eventually charged and convicted, following interviews with the police on January 2, 3, 4, and 7, 1993.

Mr. Perry's pretrial counsel was Dee Wampler, whom he retained on January 4 prior to his third interview. Mr. Perry asserts that Mr. Wampler rendered ineffective assistance by arranging for him to be interviewed by police once without the presence of counsel (on January 4) and again with counsel absent for a part of the time (on January 7), during which interviews Mr. Perry made damaging statements that were used against him at trial. Mr. Perry contends that the state court erroneously found that he and his parents decided that he should talk to the police despite Mr. Wampler's express advice not to do so.

It is helpful to clarify the contents of the Missouri courts' findings of fact relating to the ineffective assistance of counsel claim, as these findings are presumed to be correct absent "clear and convincing evidence" to the contrary presented by Mr. Perry, *see* 28 U.S.C. § 2254(e)(1). This "presumption of correctness applies to factual determinations made by state courts, whether the court be a trial court or an

appellate court. The statute makes no distinction between the factual determinations of a state trial court and those of a state appellate court." *King v. Bowersox*, 291 F.3d 539, 540 (8th Cir. 2002) (internal quotations omitted), *cert. denied*, 537 U.S. 1093 (2002).

The Missouri Court of Appeals made the following factual findings in denying Mr. Perry's ineffective assistance of counsel claim:

> There was testimony at the evidentiary hearing that Wampler advised [Mr. Perry] against making both the January 4th and the January 7th statements to the police. Wampler testified that he initially advised [Mr. Perry] not to go to the interview on January 4, but that it was "their call. If Jermaine wanted to go it was -- it would be his call; he's the client." Wampler testified that he did call to confirm the 1:30 appointment "as just a courtesy." On cross-examination, Wampler testified that he advised the Perrys to not feel pushed into having to make the 1:30 appointment with the juvenile officer. Wampler testified that he "warned them about the pitfalls of talking to the police," but the Perrys were "hell bent" on talking to the police and telling the truth.

> Conversely, Eldo Rado Perry ([Mr. Perry's] adoptive father) testified that he had not scheduled the appointments, but that the decision was made by Wampler. He testified that Wampler did not advise them against it, and told them to return on January 7 for an appointment with juvenile authorities. Mary Perry ([Mr. Perry's] mother) testified that going to the 1:30 p.m. appointment on January 4 was Wampler's idea and that he made the phone call to arrange it. She testified that she did not want [Mr. Perry] to make a statement. [Mr. Perry] testified that when he went to the January 4 interview, it was what his attorney wanted him to do, and that he did not want to go, nor did his parents want him to go to the interview. He testified that Wampler set up the interview, and made the decision for him to talk to the police on January 7. [Mr. Perry] also testified that Wampler told him it was best to make the statement, and that Wampler never said he was better off not talking to the police.

Wampler testified that he did not remember whether he scheduled the January 7th meeting, or if someone else did. Wampler did state that his "general thought" was that if [Mr. Perry] talked to the police, it might result in him remaining under the juvenile system, and not be certified as an adult. Wampler accompanied [Mr. Perry] to the January 7 statement.

Giving deference to the motion court's ability to judge the credibility of the witnesses, this court does not conclude that the court erred when finding this claim to be "without merit." There was evidence indicating that the attorney's performance was not deficient, as he testified that he advised [Mr. Perry] not to talk to the authorities, and [Mr. Perry] acted against that advice.

*Perry v. State*, 11 S.W.3d 854, 858-59 (Mo. Ct. App. 2000). The district court, after citing the factual findings of the Missouri courts, stated:

Absent clear and convincing evidence to the contrary, the factual determinations of the state court are presumed to be correct. *See* 28 U.S.C. § 2254(e)(1). [Mr. Perry] has not presented this Court with clear and convincing evidence that would cause this Court to disregard factual determinations made by the Missouri courts. Therefore, as stated by the Missouri Court of Appeals, there is evidence tending to show that Mr. Wampler's performance was within the bounds of competency in advising [Mr. Perry] not to make a statement to authorities on January 4th and 7th and that [Mr. Perry], at the behest of family members seeking the truth, made the statements anyhow. In light of the facts as found by the Missouri courts, this Court cannot say that the holding of the Missouri Court of Appeals is contrary to, or involved an unreasonable application of, clearly established federal law as is required before this Court can issue a writ of habeas corpus. *See* 28 U.S.C. § 2254(d)(1).

While the Missouri Court of Appeals made its findings of fact regarding Mr. Wampler's behavior in the process of evaluating Mr. Perry's ineffective assistance of counsel claim, which involved both questions of law and fact, the underlying factual findings are entitled to deference. We agree with the district court that, in the

-4-

course of rejecting Mr. Perry's ineffective assistance of counsel claim, the Missouri Court of Appeals found it to be a fact that Mr. Wampler advised Mr. Perry against making both the January 4 and the January 7 statements to the police.

Indeed, Mr. Perry agrees in his brief that the Missouri courts made a factual finding that Mr. Wampler advised him not to talk to the police on both January 4 and 7. Discussing a statement made by Mr. Wampler during the January 7 interview, Mr. Perry argues that "[t]his cannot be reconciled with the state court's finding that Wampler's advice to appellant was not to proceed with the interrogation." Mr. Perry also notes that "Wampler claimed that he advised appellant not to talk to police on January 4 and 7, 1993, a position which the state court credited." Mr. Perry's argument is not that the Missouri courts did not find that Mr. Wampler advised him not to talk to the police on January 4 and 7, but that the presumption of correctness of this finding has either been overcome or is inapplicable. He has thus acquiesced in the district court's determination that the state court found it to be a fact that Mr. Wampler advised him not to talk to the police, and he has consequently forfeited any claim based upon the premise that the state court never made such a factual finding.

In attempting to demonstrate that the state courts' fact-finding was inconsistent and contradictory, and thus not entitled to a presumption of correctness, Mr. Perry relies upon evidence before the state post-conviction court that Mr. Wampler affirmatively allowed both interviews to proceed. A deputy juvenile officer testified that Mr. Wampler called to set up the date and time of the January 4 interview after indicating that Mr. Perry "wanted to come into the office and tell [the police] what happened." During the audiotaped January 4 interview, the chief juvenile officer told Mr. Perry that Mr. Wampler had "authorized" Mr. Perry to "go ahead and talk to us in his absence" and that Mr. Wampler had "indicated to us that you can proceed." And during the audiotaped January 7 interview, Mr. Wampler, who was present

-5-

during the first part of the interview, affirmatively indicated to a detective that he was "ready to proceed to allow [Mr. Perry] to be questioned."

None of this evidence, however, is inconsistent with or contradicts the state court's finding that Mr. Wampler had *advised* Mr. Perry not to talk to the police on January 4 and 7. It does tend to show that Mr. Wampler left the ultimate choice of whether to talk to the police to his client and that he did not impede Mr. Perry's desire to ignore his legal advice by making statements to the police. But the evidence does not constitute clear and convincing evidence sufficient to rebut the presumed correctness of the state court's finding that Mr. Wampler advised Mr. Perry not to talk to the authorities and that Mr. Perry acted against that advice.

Mr. Perry also argues that the presumption of correctness is not dispositive of his right to relief on this claim because the Missouri courts made the "inherently contradictory findings" that, on the one hand, Mr. Wampler told him not to make a statement, but that on the other, Mr. Wampler had valid strategic reasons for advising him to confess. The Missouri Court of Appeals did note that Mr. Wampler had "state[d] that his 'general thought' was that if Movant talked to the police, it might result in him remaining under the juvenile system, and not be certified as an adult." *Perry v. State*, 11 S.W.3d at 859. During the post-conviction hearing, however, in response to the question "And still, the meeting on the 7th was still against your advice?" Mr. Wampler had testified, "It was against my advice and admonition, and when Jeremaine said this is what he wanted to do, I said, 'I'm with you. I will go with you. And we will go together, and that's what we'll do, and -- and we're off.' " Earlier in the post-conviction hearing, Mr. Wampler had provided a more nuanced explanation of his thoughts about the decision to submit to the January 7 interview, stating, "I talked to Jeremaine, and, you know, the general thought was that this is what he wanted to do, and he was a fine young man, fetching young man, and looked like if he did testify and cooperate, that there was a possibility that they wouldn't certify him. And that was what we were shooting for: we didn't want him certified."

We think that Mr. Wampler's eventual recognition of the strategic benefits of cooperating with the police is not sufficiently contradictory to his initial "advice and admonition" that Jeremaine not talk to the police to allow a rejection of the Missouri courts' factual findings. It is plausible that Mr. Wampler's awareness of both Mr. Perry's earlier fabricated statements to the police and Mr. Perry's steadfast desire to come clean with the truth led him to abandon his attempt to prevent Mr. Perry from volunteering for another interview. We thus conclude that the Missouri courts' findings were not inherently contradictory, and thus that their finding that Mr. Wampler advised Mr. Perry against speaking to the police on January 4 and 7 should be presumed correct.

Simply put, the Missouri courts decided to credit the testimony of Mr. Wampler and the deputy juvenile officer that Mr. Wampler had advised Mr. Perry not to speak with the police, and to discredit the testimony of Mr. Perry and his parents that Mr. Wampler had advised them to talk to the police. Federal habeas review "gives federal courts no license to redetermine [the] credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). We therefore reject this claim.

III.

Mr. Perry also contends that he did not waive his *Miranda* rights knowingly, voluntarily, and intelligently because of his limited intellect and maturity, and because of coercion and pressure applied by the police and juvenile authorities. The state argues that this claim is procedurally barred due to a failure to present it in state court.

To avoid a procedural default, a habeas petitioner must "present the same facts and legal theories to the state court that he later presents to the federal courts." *Jones v. Jerrison*, 20 F.3d 849, 854 (8th Cir. 1994). In state court, Mr. Perry claimed that he "did not make a knowing and voluntary waiver of his constitutional rights to

remain silent and to counsel because statements elicited from him were in violation of" a Missouri juvenile court rule requiring the authorities to give juveniles certain warnings about their rights. The factual and legal bases for Mr. Perry's claim in state court thus differed somewhat from those relied upon here, and it is therefore probably barred. We find it unnecessary, however, to resolve that question, as Mr. Perry's claim clearly fails on the merits.

The United States Supreme Court has made clear that the validity of a *Miranda* waiver has "two distinct dimensions" – whether the waiver is voluntary and whether it is knowing and intelligent. *Colorado v. Spring*, 479 U.S. 564, 573 (1987). We thus evaluate Mr. Perry's claim that his waivers were "not knowing, voluntary and intelligent" within this bifurcated framework.

## A.

We first address Mr. Perry's argument that his *Miranda* waivers were not voluntary. The proper inquiry is whether the *Miranda* waiver "was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *United States v. Turner*, 157 F.3d 552, 555 (8th Cir. 1998).

Mr. Perry contends that the police utilized coercive tactics in obtaining his waiver by lying to him about his attorney's instructions and subjecting him to repeated questioning. We reject these contentions. First, the record does not show that the police lied to Mr. Perry, as the truth of their statement to him that "Mr. Wampler has indicated to us that you can proceed [with the interview]" is consistent with the state court's finding that Mr. Wampler had advised Mr. Perry against making statements to the police but had left the final decision on whether to talk in the hands of Mr. Perry and his parents. Mr. Perry's argument that his waivers were involuntary because he "was repeatedly interrogated over the course of several days" is also plainly without merit. The waivers at issue undisputedly occurred

before the beginning of each of Mr. Perry's interviews. The quantity and frequency of questions asked within an interview cannot possibly have any effect on a waiver that precedes that interview.

To the extent that Mr. Perry is contending that the frequency and duration of the questioning rendered his *confessions* involuntary *despite* his waivers, we reject this contention as well. Mr. Perry voluntarily appeared at the police station for both of the interviews in which he made the damaging recorded statements used against him at trial. The duration of the questioning was not excessive: the January 4 interview lasted one hour, and the January 7 interview lasted one-and-a-half hours. Transcripts of each of the interviews reveal that, following Mr. Perry's *Miranda* waivers, police investigators asked direct and straightforward questions, and no threats or promises of leniency were made. Mr. Perry has failed to show that his confessions were involuntary because he has failed to show that he was subjected to coercive police tactics.

B.

We also reject Mr. Perry's argument that his waivers were not knowing and intelligent. A valid *Miranda* waiver "must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421. The Missouri Court of Appeals found that "under the totality of the circumstances, it is clear that [Mr. Perry] was fully aware that anything he said during each of his interviews could be used against him in an adult court proceeding." *State v. Perry*, 954 S.W.2d 554, 563 (Mo. Ct. App. 1997) (*Perry I*). Mr. Perry has not presented clear and convincing evidence sufficient to rebut the presumed correctness of these findings. Indeed, there is substantial evidence indicating that Mr. Perry subjectively understood and waived his rights to remain silent and to have counsel present. As the state court noted, transcripts from Mr. Perry's interviews support a conclusion that he was informed of his rights and was afforded appropriate warnings before the beginning of each interview, and that

he affirmatively indicated his understanding of those rights. *Id.* at 562-63. Mr. Perry thus cannot prevail on this claim.

## IV.

Mr. Perry's third claim is that his right to the effective assistance of counsel was violated by Mr. Wampler's disclosure to the prosecution of privileged or secret information obtained from Mr. Perry during attorney-client conferences. The proper standard for evaluating Mr. Perry's claim is set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), under which Mr. Perry must show both deficient performance on Mr. Wampler's part and resulting prejudice to his case.

Just prior to Mr. Perry's trial, the special prosecutor disclosed to the trial court that he had met with Mr. Wampler and that he intended to call Mr. Wampler to testify that, prior to Mr. Perry's confession to the police, Mr. Perry made a statement to Mr. Wampler that he had shot his grandfather twice. After an objection and a hearing to determine whether the statements were protected by the attorney-client privilege, the special prosecutor decided not to call Mr. Wampler as a witness. Mr. Perry contends that, despite the fact that the communications between Mr. Perry and Mr. Wampler were never placed before the jury, Mr. Wampler's decision to provide the prosecution with statements made by Mr. Perry amounts to ineffective assistance of counsel in violation of Mr. Perry's sixth amendment rights.

It is undisputed that Mr. Wampler met with prosecutors and provided them with statements made by Mr. Perry during attorney-client conferences that his parents attended. The Missouri Court of Appeals found that "such a meeting is unusual, if not improper," *Perry v. State*, 11 S.W.3d 854, 861 (Mo. Ct. App. 2000) (*Perry II*), and the district court found that "Mr. Wampler disclosed confidential information regarding Petitioner's statements to Special Prosecutors in this case and thus fell below the standard expected of a reasonably competent attorney under similar circumstances."

-10-

We agree with the district court that Mr. Wampler's revelation to the prosecution of secret information relating to his representation of Mr. Perry was professionally unreasonable, whether or not Mr. Perry's statements were protected by the attorney-client privilege. We also agree with the district court, however, that Mr. Perry has failed to make the requisite showing that Mr. Wampler's actions prejudiced his defense.

Prejudice is shown only where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. We concede that Mr. Wampler's disclosures may have had some negative impact on Mr. Perry's defense. The special prosecutor gave the following reason to the trial court for seeking to introduce Mr. Wampler's statement: "I know what's coming down the road. [The defendant]'s going to ... say, they forced me to make a statement that wasn't true ... [W]e have been told that his position is, I didn't do this crime, that I confessed to something I didn't do." The information supplied by Mr. Wampler gave the special prosecutor insight into the defense strategy of challenging the reliability of Mr. Perry's statements to the police. The mere possibility of Mr. Wampler testifying might have affected Mr. Perry's defense strategy at trial. Because Mr. Wampler did not testify, however, the theory that his disclosures to the prosecution altered the jury's verdict is too speculative to satisfy the "prejudice" requirement of an ineffective-assistance claim. Mr. Perry has failed to show that it was reasonably probable that Mr. Wampler's actions changed the result of his trial.

## V.

Mr. Perry was certified to stand trial as an adult by former Missouri Circuit Judge Thomas McGuire. Mr. Perry contends that the proceedings before Judge McGuire violated his rights to due process and equal protection of the law under the fifth and fourteenth amendments because Judge McGuire was prejudiced against Mr. Perry, who is black, because of his race. The due process clause

guarantees a fair and impartial judge, of course, but we begin a consideration of this kind of claim with a presumption that decision-makers are honest and impartial. *See Gordon v. Hansen*, 168 F.3d 1109, 1114 (8th Cir. 1999) (per curiam).

Mr. Perry's argument that Judge McGuire's decision to certify him as an adult was motivated by racial bias is based on racially derogatory remarks that Judge McGuire allegedly made off the record. Paul Hungerford, Judge McGuire's former bailiff, testified at a motion hearing before the trial court that while the petition to certify Mr. Perry as an adult was pending, Judge McGuire said "something to the effect that" Mr. Perry's parents "had raised a nasty little nigger that killed the best niggers in Springfield." Mr. Hungerford also admitted in his testimony, however, that he had had a disagreement with Judge McGuire over a job. In Judge McGuire's deposition, which was introduced at the hearing, he denied ever having made the comments alleged by Mr. Hungerford or any other racist comments in connection with the case. The state trial court chose to believe Judge McGuire and to disbelieve Mr. Hungerford, and the state appellate court, in denying the claim, deferred to the trial court's superior opportunity to determine the credibility of witnesses whom it observes. *Perry I*, 954 S.W.2d at 567-68 & n.19.

Under § 2254(e)(1), the Missouri courts' finding discounting Mr. Hungerford's testimony is entitled to a presumption of correctness unless Mr. Perry can rebut the presumption by "clear and convincing evidence," 28 U.S.C. § 2254(e)(1). He has failed to present such evidence. A federal habeas court has no power to redetermine Mr. Hungerford's credibility. *See Marshall*, 459 U.S. at 434. Furthermore, Mr. Perry has identified no other evidence in the record tending to show that Judge McGuire's decision to dismiss the juvenile proceeding was the product of racial prejudice. Although Mr. Perry asks us to consider newspaper articles about events involving Judge McGuire unrelated to Mr. Perry's proceedings, those articles were not in the record below and, in any event, are necessarily hearsay, and thus could not properly be before the court.

Mr. Perry argues that he was entitled to an evidentiary hearing in the federal district court in order to develop a factual basis for this claim. A federal habeas court's power to conduct an evidentiary hearing is, however, sharply limited by 28 U.S.C. § 2254(e)(2)(B), which provides that, as a prerequisite to such a hearing, a petitioner must show that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." Because Mr. Perry does not even contend that he has any new evidence bearing on his actual innocence, it would be inappropriate to conduct new evidentiary inquiries at this stage in the proceedings. For all of the reasons stated, we deny this claim.

## VI.

Mr. Perry was brought to trial and convicted by a jury in September, 1996, over three-and-a-half years after his original detention in juvenile court. He contends that this delay deprived him of his sixth amendment right to a speedy trial.

The state appellate court evaluated and rejected this claim using the principles outlined in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), under which a court faced with this kind of claim is obliged to consider the length of delay, the reason for the delay, whether the defendant asserted his right in the trial court, and any prejudice that the delay caused the defendant. *Perry I*, 954 S.W.2d at 565-66. The court first noted that the delay in bringing Mr. Perry to trial exceeded eight months, and was thus presumptively prejudicial, inviting further inquiry. *Id.* The court then found that the reason for the delay was a combination of Mr. Perry "engag[ing] in a vigorous defense, involving the filing of numerous motions, many of which were subsequently amended during the litigation process," and the State "engag[ing] in a vigorous prosecution with its attendant motions, together with its applications for change of judge." *Id.* at 566. Next, the court found that, as Mr. Perry admitted, he had failed to move for an earlier trial. *Id.* Finally, the court found that Mr. Perry's evidence of

-13-

prejudice from the delay due to his aging and change in personality was "speculative, at best." *Id.* (internal quotations omitted).

The state court's conclusion that Mr. Perry's rights were not violated, arrived at after a careful consideration of the relevant circumstances noted above, was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented to the state court. *See* 28 U.S.C. § 2254(d). This claim therefore must fail.

Mr. Perry asserted, for the first time in the district court, that he was prejudiced because "evidence was lost" and "memories faded" during the time between arrest and trial. We agree with the district court that this argument is procedurally barred due to Mr. Perry's failure to present it in state court.

## VII.

For the reasons indicated, we affirm the district court's denial of Mr. Perry's petition.

BYE, Circuit Judge, concurring.

I agree with the majority in affirming the district court's order refusing Jeremaine Perry's habeas petition and join in all parts of the majority opinion except Part II. Two reasons cause me to write separately. First, I believe the majority misstates the nature of Perry's ineffective representation claim and perpetuates an error of the district court. In a normal ineffectiveness case, I would argue we should, as a result, consider the merits of that claim. This is not such a case, which is the other reason I write separately. In my view, decisions of the Supreme Court compel the conclusion Perry did not have a right to counsel under the Sixth Amendment when he confessed to murdering his grandfather. I would affirm on that basis.

I

Part II of the majority opinion suffers, in my view, from two maladies. First, it mischaracterizes Perry's complaint about his attorney's conduct. According to the majority, Perry's claim is this: "Wampler rendered ineffective assistance by arranging for [Perry] to be interviewed by police once without the presence of counsel (on January 4) and again with counsel absent for a part of the time (on January 7), during which interviews Mr. Perry made damaging statements which were used against him at trial." Ante at 2. So stated, the most troubling aspects of Perry's claim escape review entirely. A fair rendering of the critical part of Perry's complaint follows: Wampler acted deficiently in advising Perry to *confess* to murdering his grandfather at the January 7 meeting with police, and in doing so without attempting to engage in plea bargaining to keep Perry in the juvenile justice system. This is a serious charge that raises important questions even under the unforgiving standard of Strickland v. Washington, 466 U.S. 668 (1984).

The decision to admit to committing a crime is a grave one. It is, in fact, "ordinarily the most important single decision in a criminal case." United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998) (holding defendant did not receive effective assistance at post-indictment plea negotiations when counsel seriously underestimated his exposure at sentencing) (internal quotation and citation omitted); see also United States v. Day, 969 F.2d 39, 42-44 (3d Cir. 1992) (same); Toro v. Fairman, 940 F.2d 1065, 1067 (7th Cir. 1991) ("A criminal defendant has a right to effective assistance of counsel in deciding whether to accept or reject a proposed plea agreement."). Any lawyer considering such an option should do so with the utmost care. Any court reviewing such a claim should at a minimum acknowledge its nature and seriousness.

The second concern with Part II of the majority's opinion is it replicates an error of the district court. The district court misread the state trial court's findings of

fact. According to its version, the state court found Wampler advised Perry not to talk to the police on January 4 and again advised him not to talk to them on January 7, when Perry confessed to the murder. The district court deferred to these findings of fact as required by the habeas statute,[2] and rejected Perry's claim because he had not produced clear and convincing evidence to overcome the presumption of correctness such findings enjoy. With those factual findings in place, Perry's ineffectiveness claim could not survive because, at least so far as the district court could recognize, Wampler did not commit the complained of acts. The majority opinion agrees with the district court in all respects.[3] The district court's reasoning is sound but is based on a false premise—the state trial court did not find Wampler advised against confessing on January 7.[4]

---

[2]"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

[3]The majority opinion replicates the district court's error, stating: "Simply put, the Missouri courts decided to credit the testimony of Mr. Wampler and the deputy juvenile officer that Mr. Wampler had advised Mr. Perry not to speak with the police, and to discredit the testimony of Mr. Perry and his parents that Mr. Wampler had advised them to talk to the police." Ante at 7. This assertion is accurate only insofar as it is limited to the state trial court's treatment of the January 4 meeting. The state appellate court did not credit Wampler's testimony; it deferred to the state trial court's decision to credit that testimony. But the state trial court credited Wampler's testimony only insofar as it concerned the January 4 meeting.

[4]The district court treated Perry's claim with respect to the January 4 meeting correctly. The state court held a post-conviction relief hearing to determine how Wampler acted. The court heard conflicting testimony and credited Wampler's version. It found as a fact Wampler advised Perry not to give a statement on January 4 and repeatedly stated throughout its opinion that Perry ignored that advice. The district court properly deferred to the state court on this finding and concluded Wampler's conduct on January 4 was not professionally deficient because the alleged

-16-

On the contrary, the state trial court's only unequivocal statement regarding the January 7 meeting shows it found Wampler advised confession. The court wrote:

> Wampler testified that it was his belief . . . the only way to salvage a positive result was to keep [Perry] in the juvenile justice system and do everything possible to prevent Movant's certification to be tried as an adult. By January 6, once Wampler was finally told the truth by [Perry], Wampler, based on his testimony at the post-conviction relief hearing, *did have a strategy*. In his mind, the *only strategy* left to [Perry] was to *cooperate with authorities* and convince them that his client, a juvenile, should be handled by the juvenile justice system. Even the defendant was aware of the strategy that he and his attorney were trying to employ.

Findings of Fact & Conclusions of Law and Order, App. Appendix vol. VII at 2399 (emphasis added). This passage indicates the court accepted Perry's claim Wampler recommended full cooperation at the January 7 meeting. The state trial court's handling of Perry's claim is consistent with this finding. Rather than determine Wampler did not act in the manner Perry claimed, the court conducted a Strickland inquiry based on the premise that Wampler did advise confession, and rejected Perry's claim on the basis he suffered no prejudice from taking that advice.[5] Id. at 2411.

The district court therefore committed clear error in its analysis and the majority opinion replicates that error. Before the presumption of correctness "can even arise, the state court must have resolved the merits of a factual dispute. In essence . . . the habeas statute merely codifies the self-evident proposition that a state court must have made a finding on a particular issue before a federal court can defer

---

deficiency never occurred. To this limited extent I believe the district court and the majority are correct.

[5]The state court also concluded that Wampler did not violate professional standards in advising confession without attempting to negotiate a binding plea agreement. Findings of Fact, App. Appendix vol. VII at 2413.

to that finding." United States ex rel. Partee v. Lane, 926 F.2d 694, 700 (7th Cir. 1991).[6]  Since I believe the state court actually made the contrary finding—that Wampler in fact advised confession—I conclude the district court also erred in failing to defer to the state court's actual finding.  Since there is no showing the state trial court erred in this regard—indeed, no one seems willing even to engage the trial court's findings in their own right—the district court should have accepted that Wampler advised Perry to confess.

The majority prefers to disregard the district court findings of fact.  Instead it focuses on the "factual findings" of the Missouri Court of Appeals and defers to them under the rule of Sumner v. Mata, 499 U.S. 539 (1981), as it is expressed in King v. Bowersox, 291 F.3d 539 (8th Cir. 2002).  In Sumner, the Supreme Court held that state court factual findings are entitled to deference under the habeas statute, regardless whether it is a state trial court or state appellate court making those findings.  I differ with the majority over the applicability of that rule to this case.[7]  I

_____

[6]In Partee, the Seventh Circuit construed an earlier version of the habeas statute, but the requirement that federal courts presume state court findings of fact correct is essentially the same today as it was then.

[7]Sumner and its progeny apply only in those circumstances where state appellate courts make findings of fact as distinguished from reviewing findings under a standard to determine whether they are adequately supported.  So, in Sumner, the Supreme Court held that a California Court of Appeal's determinations were due deference when that court made factual findings regarding a defendant's due process challenge to a police photographic identification procedure.  Since the trial court had not considered the matter, the court of appeals was forced to make its own factual determinations. Though the court of appeals could have avoided review entirely, Sumner, 449 U.S. at 547, it chose to consider the merits of the claim.  The Supreme Court noted the importance of this feature of the case, stating:

> Admittedly, the California Court of Appeal made the factual determinations at issue here and it did so after a review of the trial court record.  Nevertheless, it clearly held a "hearing" within the meaning of

-18-

cannot agree the Missouri Court of Appeals made findings of fact in its opinion. Instead, as the majority opinion quotes at length, the court of appeals listed the record evidence both supporting and undermining the proposition that Wampler advised Perry not to talk to the police.[8] Recitation complete, the court of appeals concluded, "[g]iving deference to the motion court's ability to judge the credibility of the witnesses, this court does not conclude that the court erred when finding this claim to be 'without merit.'" Perry v. State, 11 S.W.3d 854, 859 (Mo. Ct. App. 2000) (Perry II). On its face then, the court of appeals' opinion states it is not finding facts, but instead performing the customary responsibility of an appellate court—reviewing a factual finding under a standard of review. This court previously has held a state appellate court makes a legal determination when it reviews a trial court factual finding under a standard of review, and such a legal determination is not entitled to a presumption of correctness. Jones v. Jones, 938 F.2d 838, 842-43 (8th Cir. 1991). In Jones, the court wrote:

> The Missouri Court of Appeals upheld the trial court's implicit finding with respect to each struck venire member under the clearly erroneous

> § 2254(d). Both respondent and the State were formally before the court. Respondent was given an opportunity to be heard and his claim *received plenary consideration* even though he failed to raise it before the trial court.

Id. at 546 (emphasis added). The other cases upon which the majority relies present similarly anomalous appellate court findings of fact. See Weaver v. Bowersox, 241 F.3d 1024, 1031-32 (8th Cir. 2001); Jones v. Jones, 938 F.2d 838, 843 (8th Cir. 1991).

[8]I note the Missouri Court of Appeals adverts only to evidence supporting a finding that Wampler advised Perry not to talk to the police on January 4. The only unequivocal evidence concerning the January 7 meeting indicates that Wampler did recommend Perry confess on that date. In fact, even Wampler did not deny advising confession. He claimed instead not to remember his advice regarding the January 7 meeting.

-19-

standard and stated its legal conclusions in language such as "the conclusion is not clearly erroneous," "we defer to that finding," or "we find no error." Sumner does not require us to apply the [habeas statute's] presumption to these legal conclusions.

It therefore is concluded the majority is wrong in determining the Missouri Court of Appeals made findings of fact when it recited the evidence in the record.

Indeed, if the majority were correct that the Missouri Court of Appeals made its own findings of fact, the state appellate court would have committed an error of law.[9] Missouri Supreme Court Rules of Criminal Procedure specify the standard of review for state appellate courts considering appeals from state trial court orders on post-conviction challenges under Rule 29.15. According to such rule, "[a]ppellate review of the trial court's action on the motion filed under this Rule 29.15 shall be limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Mo. R.C.R.P. Rule 29.15(k); see also, Missouri v. Madison, 997 S.W.2d 16, 22 (Mo. 1999) ("The standard of review for denial of a motion for post-conviction relief is whether the motion court's findings and conclusions were clearly erroneous."). If the state appellate court issued its own findings, it would have impermissibly exercised *de novo* review of the state trial court's findings of fact. Burton v. Missouri, 895 S.W.2d 648, 649 (Mo. App. 1995) ("Were this court to furnish the necessary findings and conclusions, review would be impliedly *de novo*

---

[9]I do not suggest that we could review such a legal error, even if it appeared that the Missouri Court of Appeals had made it. I raise the applicable standard of review to show it is most natural to interpret the court as applying a clearly erroneous standard of review, which does not require finding facts. It is not our province to correct the state courts in applying their indigenous laws, as the habeas statute limits our review to decisions "contrary to, or involv[ing] an unreasonable application of, clearly established *federal* law" or "based on . . . unreasonable determination[s] of the facts in light of . . . evidence presented in . . . State court proceeding[s]." 28 U.S.C. § 2254(d)(1) & (2) (emphasis added).

and impermissible in face of the unequivocal mandate of the Rule.").[10]  I prefer to read the appellate court decision as conforming to the court's appellate responsibilities.  I conclude, therefore, the state appellate court made no findings, and we are not required by the habeas statute to decide whether its statements are clearly erroneous under the evidence presented at the state post-conviction hearing.

I do agree with the majority, however, it being possible to read the Missouri Court of Appeals decision as construing the state trial court as finding Wampler did not recommend confessing at the January 7 meeting.  After noting the state trial court's factual findings are owed deference, the appellate court wrote: "There was evidence indicating that the attorney's performance was not deficient, as he testified that he advised [Perry] not to talk to the authorities, and [Perry] acted against that advice."[11]  Perry II, 11 S.W.3d at 859.  In so construing the state court findings of fact, the appellate court made a determination about the historical facts of the litigation of the case.  Parker v. Dugger, 498 U.S. 308, 320 (1991) ("[A] determination of what the trial judge found is an issue of historical fact. It depends on an examination of the transcript of the trial and sentencing hearing, and the

---

[10]The Burton court considered a petition under Mo. R.C.R.P. Rule 24.035, which requires appellate courts to review trial court actions regarding Rule 24.035 post-conviction petitions under a clearly erroneous standard.  The appellate review portions of Rule 24.035 and Rule 29.15 are identical.

[11]The Missouri Court of Appeals opinion is ambiguous on this point.  In the first place, the court does not distinguish cleanly between the two meetings in this portion of its discussion. Further, the opinion recites no evidence to support a finding that Wampler advised against confessing on January 7.  Quite the contrary, the opinion notes "Wampler testified that he did not remember whether he scheduled the January 7th meeting" and "Wampler did state that his 'general thought' was that if [Perry] talked to the police, it might result in him remaining under the juvenile system, and not be certified as an adult." Perry II, 11 S.W.3d at 859.  Wampler's testimony clearly undercuts the court of appeals' claim that  there was evidence that Wampler advised against talking to the police on January 7.

-21-

sentencing order. This is not a legal issue; no determination of the legality of Parker's sentence under Florida law necessarily follows from a resolution of the question of what the trial judge found."). Such determination is factual in nature, and subject to the deference federal courts owe state court factual findings under the habeas statute. 28 U.S.C. § 2254(e)(1); Dugger, 498 U.S. at 320. Accordingly, we cannot dislodge the appellate court's construal of the trial court's findings unless it clearly erred while construing them.

To determine whether the Missouri Court of Appeals construal of the facts is clearly erroneous, we must compare its version of the facts to the state trial court's written findings. We do not compare the appellate court's version to the evidence in the record because the court limited its findings to determinations about what the state trial court said. We should determine, therefore, whether the state trial court's findings of fact clearly and convincingly show it found Wampler did advise confession. As discussed above, the state trial court's findings provide all the needed evidence. Perry adequately identified the error.[12] Far from finding Wampler advised Perry against talking to the police on January 7, the state court found Wampler had advised confession. Insofar as the state court of appeals construed the trial court decision to the contrary, it committed clear error. By accepting the state appellate court's mischaracterization, the district court and the majority commit clear error as

_____

[12]It should be obvious, therefore, I do not agree with the majority's suggestion Perry acquiesced in the Missouri Court of Appeals's misconstrual. The majority relies on a narrow-gauge characterization of Perry's argument. Perry cites United States ex rel. Partee v. Lane, which holds that the state court must have made a finding before the federal courts are required by the habeas statute to defer to it. 926 F.2d at 700. He also points out the inconsistency demonstrated by the court of appeals in stating that Wampler advised against confessing and that Wampler thought Perry's only option was to confess so he could avoid prosecution as an adult. While Perry's arguments may not be artfully crafted and while he jumbles together arguments in the alternative, Perry does cite to the appropriate facts and case law. We should demand no more. While clarity and perspicacity are to be encouraged, they are not required.

well and thereby avoid grappling with the merits of what would be, absent the defect I note below, a serious ineffective representation claim.

## II

All of the foregoing assumes Perry was protected by a right to effective assistance of counsel when he confessed. Despite the problems I have with the majority opinion and despite the fact I have concerns about Wampler's conduct, I conclude we must affirm because Perry's Sixth Amendment right to counsel had not attached when he confessed.[13] Since we may affirm the district court's decision on any basis, Khaalid v. Bowersox, 259 F.3d 975, 978 (8th Cir. 2001), I would affirm solely for this reason.

The Sixth Amendment right to counsel does not attach until "the government's role shifts from investigation to accusation." Moran v. Burbine, 475 U.S. 412, 430 (1986); United States v. Ingle, 157 F.3d 1147, 1151-52 (8th Cir. 1998). The Supreme Court has identified such point as being when prosecution has commenced "by way of formal charge, preliminary hearing, indictment, information or arraignment." United States v. Gouveia, 467 U.S. 180, 188 (1984).

A defendant must have a right to counsel before having a right to effective assistance of counsel. The right to effective assistance of counsel arises from the Sixth Amendment's guarantee – "[i]n all criminal prosecutions, the accused shall

---

[13]The Fifth Amendment right to counsel may attach before the Sixth Amendment right to counsel. See, e.g., Cody v. Solem, 755 F.2d 1323, 1330 n.11 (8th Cir. 1985) ("Cody was subjected to custodial interrogation and therefore had the right to counsel under Miranda v. Arizona. Cody's sixth amendment right to counsel had attached at the time of the consent [to search] since he had been charged with the murder by way of information.") (internal citation omitted). The discussion of Part II therefore has no implications for the separate Fifth Amendment right.

enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. Supreme Court "decisions make clear that inadequate assistance does not satisfy the Sixth Amendment right to counsel." Cuyler v. Sullivan, 446 U.S. 335 (1980). Thus the right to competent assistance arises, like the right to counsel itself, at the beginning of the state's commitment to prosecution and not before. United States v. Moody, 206 F.3d 609, 612-13 (6th Cir. 2000) (holding a defendant did not have a right to effective assistance of counsel when engaged in pre-indictment plea negotiations with a government attorney);[14] United States v. Alvarez, 142 F.3d 1243, 1250 (10th Cir. 1998) (rejecting defendant's ineffectiveness claim because the "government had not initiated formal proceedings against him" when he confessed to transporting cocaine, despite the fact he had been arrested and spent a night in jail).

The federal courts of appeals have interpreted the attachment rule in two distinct ways. Some courts have held Moran and Gouveia enunciate a bright line test subject to no exceptions and no blurring. In those circuits, the Sixth Amendment right to counsel, in all of its manifestations, attaches only upon the commencement of formal charges. Moody, 206 F.3d at 613 ("The Supreme Court's holding that the Sixth Amendment right attaches only 'at or after the initiation of judicial criminal proceedings' . . . is a bright line test."); United States v. Lin Lyn Trading, Ltd., 149 F.3d 1112, 1117 (10th Cir. 1998); Alvarez, 142 F.3d at 1250; United States v. Latouf, 132 F.3d 320, 330 (6th Cir. 1997); Kight v. Singletary, 50 F.3d 1539, 1548 (11th Cir. 1995); United States v. Sutton, 801 F.2d 1346, 1365 (D.C. Cir. 1986)

---

[14]Moody is consistent with Toro, 940 F.2d 1065, cited *supra* at 2. Toro held counsel accountable to professional standards—for constitutional purposes—during *post-indictment* plea negotiations. Moody refuses to hold them accountable—again for constitutional purposes—during *pre-indictment* plea negotiations. Though the distinction is fine, the cases are consistent with each other and with existing Supreme Court precedent. The discrepant results suggest, however, that criminal defense attorneys should—in an extra-constitutional sense—await formal charges before recommending confession just in case their recommendations are professionally deficient.

(basing its view on the textual point that the Sixth Amendment provides that only the "accused" have a right to counsel).  Other courts have held the crucial moment may occur before the government files charges if the state has committed itself to prosecution.  Matteo v. Superintendent, 171 F.3d 877, 892 (3d Cir. 1999) ("[T]he right to counsel might conceivably attach before any formal charges are made."); Roberts v. Maine, 48 F.3d 1287, 1291 (1st Cir. 1995); United States v. Larkin, 978 F.2d 964, 969 (7th Cir. 1992); Judd v. Vose, 813 F.2d 494, 497 (1st Cir. 1987); United States ex rel. Hall v. Lane, 804 F.2d 79, 81-82 (7th Cir. 1986).  Though the Eighth Circuit has used language suggesting it would adopt the bright line approach, it has not directly  been called upon to take sides in this dispute.  See Ingle, 157 F.3d at 1151 ("However, 'looking to the initiation of adversary judicial proceedings, far from being mere formalism, is fundamental to the proper application of the Sixth Amendment right to counsel.'") (quoting Moran, 475 U.S. at 431).  Nor would we need to take sides for purposes of resolving Perry's ineffectiveness claim.

Perry's case falls outside even the less constrained test.  Were the Eighth Circuit to adopt the view wherein the right to counsel may attach prior to the institution of formal charges where the government has changed its stance from investigatory to prosecutory, Perry still would not benefit.  It is admitted by all parties the police were conducting an investigation when Perry confessed.  Though their interest in Perry intensified as his story changed from meeting to meeting, his interactions with the police were strictly voluntary.  Indeed, it is a crucial premise of Perry's ineffectiveness argument that he went voluntarily to the authorities and gave himself up when he did not have to do so.  Through his own testimony, Perry and Wampler shared the explicit strategy of confessing, calculated to ensure him when the authorities eventually began prosecution he would be processed as a juvenile.  Perry was not under arrest and was not confronted by expert prosecutors at the meeting. All of this is well established in the record and beyond question.  Thus, even under the more forgiving standard favored by some courts, Perry did not have a constitutional right to effective assistance of counsel before or during his January 7 meeting with

the police.  He surely did not have a constitutional right under the stricter bright line test, since he had not been charged with any crime when he confessed.  Thus, it would be futile to consider the merits of Perry's ineffectiveness claim, even should this court suppose it might otherwise succeed.

## III

Like the majority, I would affirm the district court's order denying Perry's petition for habeas corpus.  However, I decline to join the majority opinion as to Part II for the reasons set forth above.

_____