# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2456

_____

Herbert Smulls,

        Petitioner - Appellant,

v.

Don Roper, Superintendent, Potosi
Correctional Center,

        Respondent - Appellee.

*
*
*
*
*   Appeal from the United States
*   District Court for the Eastern
*   District of Missouri.
*
*
*
*

_____

Submitted: May 18, 2006
Filed: November 1, 2006

_____

Before BYE, HANSEN, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

A Missouri jury convicted Herbert Smulls of first degree murder and other crimes and sentenced him to death. His convictions and sentence were affirmed on appeal and his motion for post-conviction relief was denied. Smulls then filed this 28 U.S.C. § 2254 petition raising numerous grounds for relief. The district court denied the petition and this court granted a certificate of appealabiliy. We now affirm in part, reverse in part, and remand for further proceedings.

On July 27, 1991, Smulls and Norman Brown robbed a jewelry store owned by Stephen and Florence Honickman.  In the course of the robbery, Smulls shot Stephen and Florence; Steven died from his wounds and Florence sustained permanent injuries.  Smulls was charged with first degree murder, first degree assault, two counts of first degree robbery and two counts of armed criminal action.  At his first trial, the jury found Smulls guilty of first degree robbery but failed to reach verdicts as to the remaining counts.  Upon retrial, the jury found Smulls guilty of the five remaining counts.

During jury selection at Smulls's second trial, defense counsel objected to the prosecutor's exercise of a peremptory challenge to remove Margaret Sidney from the jury.  Counsel identified Sidney as African-American and argued the prosecutor's challenge violated Batson v. Kentucky, 476 U.S. 79 (1986).  The prosecutor offered the following explanation for the challenge:

> Judge, I made nine strikes.  I did strike the juror Ms. Sidney who, I guess, for the record was a black female.  My reasons for striking Ms. Sidney are based both upon what I observed during our voir dire and based upon my experience in trying criminal lawsuits, which has exceeded 50 cases in this courthouse including several cases before this Court in the nine years that I have been a prosecuting attorney.  My concerns with Ms. Sidney began yesterday.  Ms. Sidney was very silent during all of the questioning.  I observed at one point during my questioning concerning the death penalty a glare on her face as I was questioning that area.  She was seated in the back row, I believe, yesterday.  When I looked directly at her and asked that last row a question, she averted her eyes and wouldn't answer my question and wouldn't look at me.  That made me very nervous.  The only response I was able to get out of Ms. Sidney today was when I asked her about her occupation.  At first she responded with what I though [sic] was a very irritated answer.  She indicated that she is a mail sorter for Monsanto

Company. That she sorts mail for, I believe she said, 5000 people. And her husband works for the post office. And I believe she listed him as a custodian. It's been my experience in the nine years that I've been a prosecutor that I treat people who work as mail sorters and as mail carriers, letter carriers and people who work for the U.S. Post Office with great suspicion in that they have generally – in my experience in many of the trials that I've had – are very disgruntled, unhappy people with the system and make every effort to strike back. In my experience as a prosecutor, in trying cases where I've had several cases and left mail people on the jury, had them result in a hung jury. The most recent of which was a murder case in this courthouse last September, State versus Dana Ruff (phonetically) where a mail carrier was the holdout for a hung jury in that case. I also have several in-laws who are employees of the postal department and even though they are somewhat relatives, I share the same opinion of them. So I treat them with great suspicion. When she glared at me and just her general attitude, which included her outfit – which yesterday, I believe, included a beret and today was a ball cap with sequins on it, I just felt that she wouldn't be a good states [sic] juror. Certainly, not a strong juror in the consideration of death, should we get to that part of the trial. And also I would point out for the Court that I struck juror number eight, Ms. Dillard. I struck her for the very same reason in that she is a letter carrier and works delivering mail. And I though [sic] her attitude was also confrontational. And I did not feel that her answers were ones that would give rise to me believing she would be a strong states [sic] juror. Ms. Dillard, I would point out, is a white female. And I struck her for virtually the same reasons. It's been my experience that when I left postal workers on who seem to have an attitude, based on my interpretation, that I've had bad results. And that's why I struck her.

Appellant's App. at 14-16.

Without waiting for a response from Smulls's lawyer, the trial court overruled the <u>Batson</u> challenge. Defense counsel persisted, however, and argued:

First of all, I've been a trial attorney as long as he has, trying as many cases as he has and I didn't detect any type of attitude from Ms. Sidney.

Secondly, he said she remained silent during his questioning during the death qualification. He didn't ask her a direct question. Numerous jurors remained silent during his death question because he didn't ask them direct questions. Ms. Beeson. He didn't ask Ms. Uhlmansiek questions although he did strike her. Ms. Linn, who is a white female, she remained totally silent. I'm the only one who talked to her at all other than Mr. Copper asking her what municipality she lived in, but he did not strike her. So numerous jurors and the record will reflect that, remained silent during Mr. Waldemer's questioning. Once again today when he asked her about her occupation I did not detect any kind of animosity on her part. I think the clothing reasons are clearly pretextural [sic]. I think that there is a case where there was a juror struck on the basis of looking like what the prosecutor called a 'due debt.' And the Court found that to be pretextural [sic] and sent it back. That occurred in the City of St. Louis, but I don't have the name of the case. With regard to her being a postal worker, Mr. Waldemer has mentioned that they're at the bottom of the employment rung. I think a lot of postal workers make more money, because they're federal employees, than a lot of people who come in here for jury duty. He said he struck Ms. Dillard because she was a postal worker. She also indicated she knew the victim in this case, Florence Honickman. And to be perfectly honest, I would think that the state might have concerns that she wouldn't like Mrs. Honickman based on Mrs. Honickman's demeanor and based on comments that Mr. Waldemer made about Mrs. Honickman. So that could have very well been part of the reason for striking Ms. Dillard, other than her being a postal employee. So I feel that his reasons were pretextural [sic].

Id. at 16-18.

Without making any on-the-record findings articulating its reasoning, the trial court overruled the Batson challenge. The following morning, Smulls's attorney renewed the Batson challenge and the following colloquy occurred:

-4-

MS. KRAFT: Judge, I believe I stated on the record yesterday when I made my record that Ms. Sidney was the only black juror remaining out of the 30.

THE COURT: You made that statement.

MS. KRAFT: Okay.

THE COURT: You see, I have a problem. I don't know what it is to be black. I don't know what constitutes black. And I never, in this Court, no matter what any appellate court may say, I never take judicial notice that anybody is black or that only one person or four persons or eight persons are black. That to me is something that I don't think this Court is wise enough or any other appellate court is wise enough unless there is direct evidence as to who is black and who is white and who is orange and who is purple. I do not under any circumstances in this division ever take judicial notice of the number of people who are black. And I believe that's counsel's responsibility to prove who is black and who isn't or who is a minority and who isn't. There were some dark complexioned people on this jury. I don't know if that makes them black or white. As I said, I don't know what constitutes black. Years ago they used to say one drop of blood constitutes black. I don't know what black means. Can somebody enlighten me of what black is? I don't know; I think of them as people. I listened to the responses of Ms. Sidney. I watched her attitude very briefly as it may have been, and I'm not going to sit here and say to you that Ms. Sidney is not black. But I'm not going to make a judgment as to whether anybody else on the panel was, so in any event, I'm merely telling you that for the record. I'd rather not even discuss it on the record. But, in any event, I'm going to deny your motion for a mistrial on the basis stated. Are we ready to proceed?

Id. at 26-28.

On appeal, the Missouri Supreme Court, without commenting on the absence of findings, upheld the trial court's denial of the Batson challenge. The Court concluded the trial court did not clearly err because "[r]easons such as these have been found to support a ruling that a trial court did not clearly err[,]" and "[e]ven assuming

-5-

the prosecutor's reasons for challenging mail sorters and postal workers are nonsensical, this does not establish the reasons are inherently pretextual." State v. Smulls, 935 S.W.2d 9, 15-16 (Mo. S.Ct. 1996) (en banc).

Thereafter, Smulls filed his § 2254 petition. After the district court denied the petition, we granted a certificate of appealability. On appeal, Smulls argues 1) the prosecutor violated Batson by striking the lone black venireperson from the jury, 2) counsel was ineffective for failing to fully develop the Batson challenge, and 3) counsel was ineffective for failing to seek the disqualification of the trial judge.

II

Our review of Smulls's claims is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). We may not grant a writ of habeas corpus with respect to any issue decided by the Missouri courts unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1), (2). In Penry v. Johnson, 532 U.S. 782 (2001), the Supreme Court reiterated its interpretation of § 2254(d)(1)'s "contrary to" and "unreasonable application of" federal law standards.

> A state court decision is "contrary to" clearly established precedent if the state court either "applies a rule that contradicts the governing law set forth in our cases," or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court decision will be an "unreasonable application of" our clearly established precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."

. . .

-6-

Distinguishing between an unreasonable and an incorrect application of federal law, we clarified that even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable.

532 U.S. at 792-93 (citations omitted).

When reviewing a district court's denial of a § 2254 petition, we review the court's findings of fact for clear error and conclusions of law de novo. King v. Bowersox, 291 F.3d 539, 540 (8th Cir. 2002).

Smulls first argues the prosecutor's peremptory challenge of venireperson Sidney violated Batson. The Equal Protection Clause of the United States Constitution prohibits using peremptory challenges to exclude jurors on the basis of race. Batson, 476 U.S. at 89. To prove purposeful discrimination in the use of a peremptory challenge, a defendant must first make a prima facie case of racial discrimination. If such a showing is made, the state must suggest a race-neutral explanation for the strike. Finally, if a race-neutral explanation is offered, the trial court must decide whether the party objecting to the strike has proved purposeful discrimination. Purkett v. Elem, 514 U.S. 765, 767 (1995); United States v. Jones, 245 F.3d 990, 992 (8th Cir. 2001).

Smulls argues the prosecutor's stated reasons were pretextual because they were contrary to or unsupported by the record. For example, Smulls claims the prosecutor's characterization of Sidney as a "mail sorter" or "mail carrier" was erroneous because the record shows Sidney was a member of management at Monsanto, and, among other duties, supervised employees responsible for sorting and distributing mail. Additionally, Smulls argues the prosecutor's claim that a previous jury had been hung by a postal employee is factually inaccurate.[1]

---

[1] The state concedes the prosecutor's claim was inaccurate.

Both the trial court and the Missouri Supreme Court failed to analyze these factual disputes on the record. The district court took note of them but concluded, based on its review of the record, the prosecutor was aware of Sidney's actual job description and, even though he was mistaken about his earlier trial, the prosecutor believed a postal worker voted against conviction. Therefore, the district court concluded the Missouri courts' application of federal law was not unreasonable.

Smulls also argues the district court's rejection of his <u>Batson</u> challenge was erroneous because the trial court failed to make any factual findings to support the prosecutor's claim Sidney "glared" at him or acted "irritated" by the questioning. According to Smulls, defense counsel disputed the prosecutor's alleged observations and the trial court should have resolved the dispute on the record. Smulls also argues the side-by-side comparison of Sidney and venireperson Dillard was improper because Dillard knew the victim and was, therefore, not similarly situated.

Once again, neither the trial court or the Missouri Supreme Court chose to address these arguments on the record. The district court noted the lack of findings but rejected the arguments because defense counsel's disagreement "neither confirms nor denies that Ms. Sidney had a poor demeanor." Further, the district court concluded the lack of findings did not make the trial court's decision unreasonable. Instead, it concluded the trial court's rejection of the <u>Batson</u> challenge, and the Missouri Supreme Court's reliance upon the trial court, were reasonable based on the record.

We are concerned with the perfunctory manner in which the trial court handled Smulls's <u>Batson</u> challenge. We have previously emphasized the need to "make[] detailed findings on the record in support of a ruling on a peremptory challenge under <u>Batson</u>." <u>Moran v. Clarke</u>, 443 F.3d 646, 653 (8th Cir. 2006) (citing <u>U.S. Xpress Enter., Inc., v. J.B. Hunt Transp., Inc.</u>, 320 F3d 809, 814 (8th Cir. 2003)). Such a

view is entirely consistent with clearly established Supreme Court precedent stressing the importance for trial courts to carefully consider all evidence bearing on the issue. See Batson, 476 U.S. at 96 ("In deciding whether the defendant has made the requisite [prima facie] showing, the trial court should consider all relevant circumstances."). As to the issue of discriminatory intent – the third step in a Batson challenge, "Batson . . . requires the judge to assess the plausibility of [the prosecutor's] reason in light of all evidence with a bearing on it." Miller-El v. Dretke, 125 S.Ct. 2317, 2331-32 (2005) (citation omitted). "In deciding if the defendant has carried his burden of persuasion, a court must undertake a 'sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'" Batson, 476 U.S. at 93 (quoting Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 266 (1977)).

The record before us offers little to suggest the trial court engaged in the evaluative process anticipated by Batson and its progeny. Notably, the court initially denied the challenge without ever affording defense counsel an opportunity to rebut the racially-neutral reasons offered by the prosecutor. Despite these concerns, however, our decision today is not based solely upon what the trial court failed to say on the record. But see Hardcastle v. Horn, 368 F.3d 246, 259 (3d Cir. 2004) ('[S]ome engagement with the evidence considered is necessary as part of step three of the Batson inquiry,' and requires 'more than a terse, abrupt comment that the prosecutor has satisfied Batson.') (quoting Riley v. Taylor, 277 F.3d 262, 290-91 (3d Cir. 2001) (en banc)); Barnes v. Anderson, 202 F.3d 150, 156 (2d Cir. 1999) (ordering a new trial where the trial court denied a Batson challenge "without explicit adjudication of the credibility of the non-movant's race-neutral explanations for the challenged strikes."); and United States v. Hill, 146 F.3d 337, 342 (6th Cir. 1998) (remanding where "the record . . . indicates nothing about the district court's thought processes . . . apart from its abrupt conclusion . . . that the prosecutor's asserted justification outweighed [the defendant's] showing under the totality of the circumstances."). Rather, we reverse because trial court refused to recognize and assess all relevant circumstances as required by clearly established federal law.

When defense counsel attempted to establish for the record that Sidney was the only black juror remaining in the jury pool, the trial court inexplicably refused to acknowledge or consider the racial composition of the jury pool. "I don't know what constitutes black. And I never, in this Court, no matter what any appellate court may say, I never take judicial notice that anyone is black or that only one person or four persons or eight persons are black." Instead of considering the composition of the jury pool, as mandated by Supreme Court precedent, the trial court imposed upon the defendant an unprecedented, if not impossible, burden:

> That to me is something that I don't think this Court is wise enough or any other appellate court is wise enough unless there is direct evidence as to who is black and who is white and who is orange and who is purple. I do not under any circumstances in this division ever take judicial notice of the number of people who are black. And I believe that's counsel's responsibility to prove who is black and who isn't or who is a minority and who isn't.

Appellant's App. at 27.

We fail to comprehend how a trial court, faced with a <u>Batson</u> challenge, can purport to fulfill its obligation to properly evaluate the merits of such a claim without taking the race of prospective jurors into account. Further, we do not believe a trial court may simply avoid <u>Batson</u> by demanding the proponent of the challenge meet a burden of proof which finds no support in Supreme Court precedent.

We are aware the parties focus their arguments only on Sidney and there is no contention other jurors were improperly struck from the jury pool. Thus, it could be argued the trial court's refusal to consider the race of other prospective jurors is irrelevant to this discussion. We believe, however, under the unusual circumstances of this case, the trial court's actions and comments are indicative of a deeper problem. The trial court's initial failure to afford defense counsel an opportunity to respond to the prosecutor's racially-neutral reasons, the complete lack of findings, and the trial

-10-

court's refusal to consider the race of prospective jurors absent "direct evidence," combine to demonstrate the court was from the outset antagonistic towards the Batson challenge and unwilling to engage in the sensitive inquiry into circumstantial and direct evidence as required. See U.S. Xpress Enter., Inc., 320 F.3d at 814 n.4 (noting that under certain circumstances the "lack of specificity in a trial court record to demonstrate compliance with the Batson analysis may require remand for further findings."). Thus, we are not bound by the normal presumption of correctness in favor of the trial court's findings or the Missouri Supreme Court's affirmance of those findings. Any other conclusion would render illusory the already tenuous protections afforded under Batson.

We do not hold that, had the trial court accepted and applied controlling Supreme Court precedent, Smulls's Batson challenge would necessarily have been successful. Instead, we conclude the trial court's apparent finding of no purposeful discrimination cannot be accorded the normal presumption of correctness because of its refusal to consider all relevant circumstances as required by clearly established federal law. Moreover, the Missouri Supreme Court's conclusion that the trial court acted properly was an unreasonable application of clearly established federal precedent. Accordingly, we reverse that portion of the district court's judgment denying Smulls's habeas petition based on a violation of Batson, and remand with instructions to, in the district court's discretion, reconstruct the circumstances surrounding Smulls's Batson challenge to determine whether the prosecutor's strike of venireperson Sidney was racially motivated. We recognize the passage of time and other circumstances, e.g., the disqualification of the trial court from post-conviction proceedings, may make such a task impossible or unsatisfactory. If that proves true, we direct the district court to grant the writ. See Batson, 476 U.S. at 100 (remanding for further analysis of the Batson claim); Brinson v. Vaughn, 398 F.3d 225, 235 (3d

Cir. 2005) (same); <u>Hardcastle</u>, 368 F.3d at 261-62 (same); and <u>Garlarza v. Keane</u>, 252 F.3d 630, 640-41 (2d Cir. 2001) (same).[2]

III

For the reasons stated herein, the district court's dismissal of the petition is reversed, and the case is remanded for further proceedings in accordance with this opinion. We affirm the district court in all other respects.

HANSEN, Circuit Judge, dissenting in part and concurring in part.

While the court recites the proper standard for reviewing the state court proceedings, in my view it fails to adhere to that standard, and I therefore respectfully dissent from the court's disposition of the <u>Batson</u> claim. I concur in the court's disposition of Smulls' ineffective assistance of counsel claims.

It bears repeating that a federal court "shall not . . . grant[]" an application for a writ of habeas corpus to a prisoner in state custody unless the State courts' adjudication of the prisoner's claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

_____

[2]We find Smulls's remaining ineffective assistance of counsel claims to be without merit and affirm the district court's dismissal of those claims.

-12-

28 U.S.C. § 2254(d). In ruling on an application for a writ of habeas corpus, "a determination of a factual issue made by a State court shall be presumed to be correct," unless rebutted "by clear and convincing evidence." § 2254(e)(1). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000) (O'Connor, J., concurring).

I can find no clearly established Supreme Court precedent, and the court cites to none, that the Supreme Court of Missouri acted contrary to or unreasonably applied in rejecting Smulls' Batson challenge. See Boyd v. Newland, 455 F.3d 897, 902 (9th Cir. 2006) (holding that the state appellate court's determination that appellant failed to establish a prima facie Batson case was entitled to deference even though the state trial court applied a more onerous state standard, where the state appellate court analyzed the Batson claim under the proper federal standard). The state trial court applied the Batson standard and rejected Smulls' claim. On direct appeal, the Supreme Court of Missouri unanimously affirmed on the Batson claim, finding that Smulls objected to the prosecutor's strike of Ms. Sidney as racially discriminatory, that the prosecutor offered race-neutral reasons for the strike, and that the defense argued that the stated reasons were pretextual. The Supreme Court of Missouri correctly articulated the Batson three-step standard, found that the prosecutor's proffered reasons related to Ms. Sidney's occupation and demeanor are reasons that have been found to be race neutral, and concluded that the trial court did not clearly err in overruling the Batson challenge. See State v. Smulls, 935 S.W.2d 9, 14-15 (Mo. 1996) (en banc), cert. denied, 520 U.S. 1254 (1997). This is not a case where the state courts misapplied Batson or its progeny by applying an incorrect legal standard. Cf. Fernandez v. Roe, 286 F.3d 1073, 1077 (9th Cir.) (remanding for an evidentiary hearing where the California state courts, following state law, "erroneously required a defendant to show a 'strong likelihood' of discrimination in order to establish a

-13-

*prima facie* case rather than just an 'inference' of discrimination as required by Batson"), cert. denied, 537 U.S. 1000 (2002). There is nothing in the Supreme Court of Missouri's analysis that is contrary to Batson. See U.S. Xpress Enterprs., Inc. v. J.B. Hunt Transp., Inc., 320 F.3d 809, 814 (8th Cir. 2003) (concluding that the trial court engaged in "a full Batson analysis" where the objector made a Batson challenge, the proponent of the strike offered race-neutral explanations, both parties were allowed to argue their positions, and the trial court granted the motion without making any specific findings, implicitly finding the proponent's reasons to be racially motivated); see also Messiah v. Duncan, 435 F.3d 186, 189 (2d Cir. 2006) (holding that the trial court fulfills its "duty to rule" on the Batson third-step analysis "by expressing a clear intent to uphold or reject a strike after listening to the challenge, the race-neutral explanation, and the arguments of the parties").

I similarly find no unreasonable determination of the facts in light of the evidence presented in state court. Our court is disturbed by the absence of specific fact-findings, as well as the state trial court's purported refusal to recognize and assess all of the relevant circumstances (as we can do in the quiet of an appellate chambers, far removed from the press of an ongoing trial). However, federal law has never required explicit fact-findings, especially where a prima facie case is acknowledged and the prosecution is required to present specific nondiscriminatory reasons on the record. See Miller-El v. Cockrell, 537 U.S. 322, 347 (2003) ("We adhere to the proposition that a state court need not make detailed findings addressing all the evidence before it."). A trial court's ruling on a Batson challenge is itself a fact-finding, and we have repeatedly upheld rulings made without additional reasoning. See U.S. Xpress Enterprs., Inc., 320 F.3d at 814; see also Wainwright v. Witt, 469 U.S. 412, 430 (1985) (upholding state trial court's dismissal of juror for cause and noting "that the judge was [not] required to announce for the record his conclusion that [the] juror . . . was biased, or his reasoning. The finding is evident from the record."). "Moreover, . . . our deference to trial court fact-finding is doubly great when considering Batson challenges because of the unique awareness [on the part of

-14-

the trial court] of the totality of the circumstances surrounding voir dire." Simmons v. Luebbers, 299 F.3d 929, 942 (8th Cir. 2002) (internal marks omitted), cert. denied, 538 U.S. 923 (2003). By denying the Batson challenge, the trial court implicitly found that the prosecution's strike was based on its concern with Ms. Sidney's occupation and her demeanor, not her race. No other fact-findings were required. Our suggestions to federal trial judges that they are well advised to articulate their findings concerning the validity of the prosecutor's asserted race neutral reasons are, of course, not binding on state court judges.

Under AEDPA, it is not just the trial court's fact-findings that are presumed to be correct. The presumption, codified pre-AEDPA in § 2254(d), "applies to factual determinations made by state courts, whether the court be a trial court or an appellate court." Sumner v. Mata, 449 U.S. 539, 547 (1981) (subsequent history omitted). The statute "makes no distinction between the factual determinations of a state trial court and those of a state appellate court." Id. at 546. As we noted in Jones v. Jones, 938 F.2d 838, 842-43 (8th Cir. 1991), "Sumner requires us to also consider whether the [appellate court] made any finding of fact regarding the prosecutor's peremptory challenges." See also Weaver v. Bowersox, 241 F.3d 1024, 1031 (8th Cir. 2001) (noting that factual findings made by state appellate courts are entitled to the same presumption of correctness as findings of state trial courts). The Supreme Court of Missouri considered the circumstances from the trial court record and found the prosecutor's reasons to be the type typically found to be race neutral, and that the trial court did not clearly err in denying the challenge. These findings are supported by the state court record and are not unreasonable.

Further, the defense was allowed to respond to the prosecutor's proffered reasons and argue that the stated reasons were pretextual. While the trial court did initially deny the motion for a mistrial immediately following the prosecutor's proffered race-neutral reasons for striking Ms. Sidney, the trial court subsequently allowed the defense ample opportunity to make its argument that the proffered reasons

were pretextual. The trial court did not limit the defense, but allowed it to make the record it chose to make, considered the arguments, and then denied the motion. The defense then asked that the peremptory strike be disallowed, which the trial court overruled. The following day, the defense again raised the <u>Batson</u> challenge.[3] The trial court allowed both parties to address the issue and supplement the record. The trial court once again denied the challenge. Given this extensive record, the trial court cannot be criticized for failing to afford the defense an opportunity to respond, nor do I think it can be fairly criticized for failing to consider the relevant circumstances the attorneys pressed upon it.

Our court also finds that the state trial court refused to consider all of the relevant evidence, particularly the race of the other prospective jurors. As I understand our court's reasoning, it is troubled by the trial court's remarks about "what it means to be black." While I certainly do not condone or agree with the comments made by the state trial judge, I believe that our court improperly permits its judicial indignation at their content to cloud its review of the state court proceedings. The majority interprets the trial court's statements as having placed an undue burden on the defense to establish the race of each venire person and then avoiding the <u>Batson</u> challenge when the defense failed to meet the allegedly imposed burden. However, it is evident from the record that the state trial court was aware that Ms. Sidney was the only black venire person when it first rejected the <u>Batson</u> challenge. The defense represented to the court that she was the only black venire person when it first challenged the strike and again when it renewed the challenge the following morning,

---

[3]Our court's description of events is somewhat puzzling to the extent it suggests that the state trial court made its "I don't know what it means to be black" remarks upon the renewal of the <u>Batson</u> challenge the following morning. In fact, four pages of transcript (Appellant's App. at 22-26), during which the court allowed both parties to address the renewed <u>Batson</u> challenge and the court again overruled the challenge, precede the trial judge's ill-advised comments. Only after the defense ignored the ruling and sought to insure that the record reflected that Ms. Sidney was the only black venire person did the trial court make the criticized remarks.

and at no time did the prosecution ever dispute that fact. In short, the trial court did not make its rulings without considering the race of the prospective jurors or otherwise "avoid Batson" (supra at 10) at all, but, to the contrary, it considered the challenge and the related evidence and arguments and made its ruling.

Our court appears to conclude, without citing any authority, that the trial court's purported "refusal to consider all relevant circumstances" (supra at 11) relieves a habeas court of its obligation to apply the presumption of correctness to state court fact-findings as required by § 2254(e)(1). I must respectfully disagree. Prior to AEDPA, the presumption of correctness was contained in § 2254(d), which listed eight exceptions to the presumption. AEDPA's amendments to § 2254 "jettisoned all . . . [the] situations which previously swept aside the presumption." Valdez v. Cockrell, 274 F.3d 941, 949 (5th Cir. 2001), cert. denied, 537 U.S. 883 (2002). "The presumption of correctness erected in its place at § 2254(e)(1), now simply provides that unless the petitioner can rebut the findings of fact through clear and convincing evidence, those findings of fact are presumed to be correct." Id. See also Miller-El, 537 U.S. at 358-59 (Thomas, J., dissenting) ("Section 2254(e)(1) does not, as its predecessor did, create exceptions to factual deference for procedural infirmities. . . . Section 2254(e)(1) simply cannot be read to contain an implied sliding scale of deference.") (noting that the majority opinion does not appear to conflict with this view). Thus, regardless of the court's dispute with the extent of the evidence considered by the state trial court, we may reject the state court's factual findings only if those findings are proven incorrect "by clear and convincing evidence." § 2254(e)(1); see also Hall v. Luebbers, 342 F.3d 706, 713 (8th Cir. 2003) ("Each step of the Batson inquiry involves a factual determination entitled to a presumption of correctness unless overcome by clear and convincing evidence.").

The circumstance that was purportedly ignored–the race of each of the potential jurors–could support an inference that the prosecutor's stated reasons were pretextual, where the prosecution struck the only black juror. That fact alone, however, when

-17-

considered together with the record as a whole, does not in this case provide the clear and convincing evidence necessary to rebut the presumption of correctness afforded to the state courts' determination, particularly the state supreme court's finding, that the prosecution's strike was race neutral. Cf. Miller-El v. Dretke, 125 S. Ct. 2317, 2339-40 (2005) (holding that the state court's acceptance of the prosecutor's explanation for striking ten of the eleven qualified black venire persons was shown to be erroneous by clear and convincing evidence, including the prosecution's use of the "jury shuffle," disparate venire questions posed to black and white jurors, comparison of similarly situated black and white jurors, and the admitted practice of the Dallas County Prosecutor's Office of removing minorities from juries). Nor does the court today suggest that it does. Further, the trial court's objectionable comments were made after the defense had again informed the trial court that Ms. Sidney was the only black venire person, a fact not disputed by the prosecution at any time, and after the court had thrice rejected the Batson challenge. Batson is concerned with the prosecutor's reasons for striking a juror, and the state trial court's comments do not make the prosecutor's proffered reasons any less race neutral or not asserted in good faith.

In summary, the court today fails to adhere to the narrow AEDPA standard by which we are bound. We are not permitted to grant habeas relief to a state prisoner because we would have ruled the objection differently had we been the state trial court, nor do we sit as a court of initial review over state trial judges. The state trial court permitted a full Batson inquiry and denied the objection after hearing the prosecution's race-neutral reasons and the defense's arguments of pretext. The Supreme Court of Missouri properly applied Batson, examined in detail the prosecutor's reasons and found the race-neutral justifications for the strike to be credible, and affirmed. The Supreme Court of Missouri also found that the prosecutor had exercised a strike against a white juror that the court found was similarly situated, a finding that is not unreasonable. In my opinion, our court errs in summarily concluding, without citation to any Supreme Court case, that the Supreme Court of

-18-

Missouri's <u>Batson</u> analysis was an unreasonable application of clearly established Supreme Court precedent or an unreasonable determination of the facts. Further, our court points to no evidence, let alone clear and convincing evidence, that contradicts the state courts' findings; we are therefore bound by the congressionally-created presumption that those findings are correct.

Finally, the court's remand instructions are both perplexing and troubling. In my view, our duty in habeas proceedings, as was the district court's duty, is to review the state court record as it stands, not to "reconstruct" the surrounding circumstances to determine anew, as in the first instance (but actually 14 years after the event), whether a strike was racially motivated. Each of the cases cited by the court that ordered a remand, <u>supra</u> at 12, involved state courts that failed to make a <u>Batson</u> ruling. The same is not true here. Under the strict standard governing this appeal, I would affirm outright the district court's well reasoned denial of the § 2254 petition.

———————————————————